Marilynn R. MALCOM, Petitioner–
Appellant,

v.

Alice PAYNE, Respondent–Appellee.

No. 00–35770.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 2001.

Filed Feb. 22, 2002.

---

54. 42 U.S.C. § 666(a)(16) (1998).

55. *See* 378 U.S. at 510–11, 84 S.Ct. 1659.

56. *See* 22 C.F.R. §§ 51.70, 51.71 (2001).

57. *See Aptheker*, 378 U.S. at 508, 84 S.Ct. 1659.

Michael R. Snedeker, Snedeker, Smith & Short, Portland, OR, for the appellant.

Paul Douglas Weisser, Attorney General's Office, Olympia, WA, for the appellee.

Before LAY,* TROTT, and BERZON, Circuit Judges.

* The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by desig-nation.

TROTT, Circuit Judge.

Was Washington state prisoner Marilynn Malcom's federal petition for habeas corpus timely filed? The answer to that question depends primarily on whether Malcom's state clemency petition tolled the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2244(d) (2000).

The district court deemed untimely Malcom's federal habeas petition after concluding that Malcom's state clemency petition did not toll AEDPA's limitations clock. However, concluding that reasonable jurists could differ on the question, the district court issued a certificate of appealability. We therefore have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 2253 (2000).

We hold that a prisoner's state petition for clemency does not toll AEDPA's one-year statute of limitations. We conclude also that Malcom is not entitled to equitable tolling. Accordingly, we affirm the district court's determination that Malcom's federal habeas petition was untimely.

## I

## Background

## A. State Proceedings

### 1. Trial and Direct Appeal

A Washington jury convicted Marilynn Malcom in 1987 of several counts of statutory rape and indecent liberties. She unsuccessfully appealed her conviction to the Washington Court of Appeals and to the Washington Supreme Court. Malcom's conviction became final in 1991.

### 2. Malcom's First Personal Restraint Petition

In 1991, while directly appealing her case, Malcom filed a personal restraint petition—the equivalent of a state petition for habeas corpus—with the Washington Court of Appeals. *See* WASH. REV. CODE § 7.36.010 (2000). The state court of appeals dismissed Malcom's petition, and she did not seek discretionary review from the state supreme court.

### 3. Malcom's Petition for Clemency

Five years later, on September 3, 1996, Malcom submitted a request for clemency to the Governor of Washington State. *See id.* § 9.94A.260 (2000). While her *pro se* clemency request was pending, a lawyer named Michael Snedeker agreed to represent Malcom, and on August 15, 1997, he filed another petition for clemency on her behalf. The Governor's Clemency and Pardons Board entertained oral argument on Malcom's petition, and on September 10, 1997, the Governor's general counsel denied Malcom's request for clemency.

### 4. Malcom's Second Personal Restraint Petition

On February 10, 1998, Malcom, through counsel, filed a second personal restraint petition. The Washington Court of Appeals initially observed that Malcom's second personal restraint petition was not filed within one year after her conviction became final, as required by statute. *See id.* § 10.73.090 (2000). Malcom argued, however, that because her petition was based on "newly discovered evidence," she fell within a statutory exception to the limitations period. *See id.* § 10.73.100 (2000).

The court of appeals disagreed and dismissed Malcom's second personal restraint petition on two procedural grounds: (1) Malcom's petition did not fall within the "newly discovered evidence" exception, and therefore was untimely; and (2) Mal-

com's petition raised the same issues as her first personal restraint petition, and thus was successive. *See id.* § 10.73.140 (2000).

Malcom sought discretionary review from the Washington Supreme Court, and that court rejected her claims on May 5, 1999.

## B. Malcom's Federal Petition for Habeas Corpus

 AEDPA imposes a one-year statute of limitations on habeas corpus petitions filed by state prisoners in federal court. 28 U.S.C. § 2244(d)(1). For state prisoners, like Malcom, whose convictions became final prior to AEDPA's enactment, AEDPA's one-year statute of limitations began to run on April 25, 1996, the day after AEDPA was enacted. *Patterson v. Stewart,* 251 F.3d 1243 (9th Cir.2001). Counting forward one year, Malcom had until April 24, 1997, in which to file her federal habeas petition, unless the statute of limitations was statutorily or equitably tolled. *See id.* However, Malcom did not file her federal habeas petition until July 1, 1999, over two years late. Recognizing this problem, she argued that the one-year limitations period should have been statutorily or equitably tolled.

The magistrate judge assigned to hear Malcom's petition acknowledged that AEDPA's limitations period is statutorily tolled during the time which "a properly

filed application for State post-conviction or other collateral review . . . is pending . . . ." 28 U.S.C. § 2244(d)(2). After April 25, 1996, the day AEDPA's limitations clock began ticking, Malcom made two attempts to undo her conviction, consisting of (1) her second personal restraint petition, and (2) her clemency petition. The magistrate judge determined that Malcom's federal habeas petition would have been timely filed only if *both* her second personal restraint petition *and* her clemency petition tolled AEDPA's one-year limitations clock.[1] According to the magistrate judge, *neither* Malcom's second personal restraint petition nor her clemency petition tolled § 2244(d)(2)'s limitations clock.

As for equitable tolling, the magistrate judge found that Malcom presented no extraordinary circumstances beyond her control which prevented her from filing a timely federal habeas petition.

The district court adopted wholesale the magistrate judge's report and recommendation urging the court to dismiss the petition as untimely.

## II

### Discussion

#### A. Standard of Review

 We review de novo the district court's dismissal of Malcom's federal habeas petition on statute of limitations

---

1. We reproduce, with minor corrections, the magistrate judge's date calculations: (1) on April 25, 1996, the day after AEDPA was enacted, the limitations period began to run; (2) on September 3, 1996—132 days later—Malcom filed her clemency petition; (3) on September 10, 1997, the governor denied her clemency petition; (4) on February 10, 1998—155 days after her clemency petition had been denied—Malcom filed her second personal restraint petition; (5) on May 5, 1999, the Washington Supreme Court denied her second personal restraint petition; and (6) on July 1, 1999—57 days after her second personal restraint petition was denied—Malcom filed the instant federal habeas petition. Adding up the days where she had no state petition pending, Malcom filed her federal habeas petition *342 days* after the enactment of AEDPA, just within the one-year period allotted by statute. *See* 28 U.S.C. § 2244(d)(1); *see also Nino v. Galaza,* 183 F.3d 1003, 1005–06 (9th Cir.1999).

grounds. *Miles v. Prunty*, 187 F.3d 1104, 1105 (9th Cir.1999). Likewise, we review de novo the district court's decision on the issue of equitable tolling. *Id.*

## B. Statutory Tolling

Section 2244(d)(2) is the tolling provision at issue in this case. *See* 28 U.S.C. § 2244(d)(2). It provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.*

Malcom's federal habeas petition was timely only if (1) her second personal restraint petition *and* (2) her clemency petition *both* tolled the AEDPA limitations clock. As discussed below, we conclude— contrary in part to the district court's decision—that (1) Malcom's second personal restraint petition *did* toll AEDPA's limitations clock, but (2) Malcom's state clemency petition did *not*.

## 1. Malcom's Second Personal Restraint Petition Was "Properly Filed" and Thus Tolled the Limitations Clock

■ The magistrate judge determined that because Malcom's second personal restraint petition was dismissed as untimely and successive, it was not a "properly filed application" for state review, and therefore did not toll the statute of limitations. *See* 28 U.S.C. § 2244(d)(2) ((tolling limitations period during the time "which a *properly filed application* for State post-conviction or other collateral review . . . is pending") (emphasis added)). Coming to this conclusion, the magistrate judge relied on *Dictado v. Ducharme*, 189 F.3d 889 (9th Cir. 1999) ("*Dictado I*"). Since the magistrate judge's decision, however, we have overruled *Dictado I* and filed a new opinion.

*See Dictado v. Ducharme*, 244 F.3d 724, 724 (9th Cir.2001) ("*Dictado II*").

In that case, Dictado filed a personal restraint petition in Washington state court, which the state court dismissed as untimely and successive. *Id.* at 725. We held that Dictado's personal restraint petition was "properly filed" even though the Washington Supreme Court dismissed it as untimely and successive. First, because "Washington's statute governing successive state personal restraint petitions is a 'condition to obtaining relief' and not a 'condition to filing,'" Dictado's petition was "properly filed" even though it had been dismissed as successive. *Id.* at 727. Second, we observed that the Washington rules on timely filings are not absolute; they contain several exceptions. *Id.* at 727–28; *see* WASH. REV. CODE § 10.73.100 (noting exceptions). Answering a question expressly left open by the Supreme Court in *Artuz v. Bennett*, 531 U.S. 4, 121 S.Ct. 361, 363 n. 2, 148 L.Ed.2d 213 (2000), "[w]e h[e]ld that if a state's rule governing the timely commencement of state postconviction relief petitions contains exceptions that require a state court to examine the merits of a petition before it is dismissed, the petition, even if untimely, should be regarded as 'properly filed.'" *Dictado II*, 244 F.3d at 728; *accord Smith v. Ward*, 209 F.3d 383, 384–85 (5th Cir.2000); *but see Webster v. Moore*, 199 F.3d 1256, 1258– 59 (11th Cir.2000) (finding state habeas petition not "properly filed" because it did not meet state filing deadlines; no discussion of exceptions to deadline). Because Washington's timeliness rules contain exceptions that require the state court to examine the merits of the petition, we ruled that Dictado's petition was "properly filed" even though it was dismissed as untimely. *Dictado II*, 244 F.3d at 726–28.

Malcom's case is indistinguishable from *Dictado II*. Both petitioners filed personal

restraint petitions in Washington state court and were subject to Washington's rules regarding successive petitions and timely filings. Both petitions were ultimately dismissed as untimely and successive, but both required the court to determine whether the petition fell within one of the enumerated statutory exceptions to timely filing, namely the "newly discovered evidence" exception. Like Dictado's petition, Malcom's second personal restraint petition was "properly filed" and counts in her favor for purposes of AEDPA tolling.

### 2. Malcom's Petition for Clemency is Not "State Post Conviction or Other Collateral Review" for AEDPA Purposes, and Therefore Did Not Toll AEDPA's Limitations Clock

We now come to the heart of this case: whether Malcom's state petition for clemency also tolled AEDPA's limitations period. We hold that it did not.

In determining whether a state clemency proceeding tolls AEDPA's limitations clock, we look first to the plain language of the statute. See generally DeGeorge v. United States Dist. Court for Cent. Dist. of California, 219 F.3d 930, 937 (9th Cir. 2000) ("The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute. The first step in ascertaining congressional intent is to look to the plain language of the statute."). Section 2244(d)(2) provides that the AEDPA clock is tolled during the time in which "a properly filed application for *State post-conviction or other collateral review* ... is pending...." 28 U.S.C. § 2244(d)(2) (emphasis added).

Malcom urges a broad reading of the phrase "State post-conviction or other collateral review" to include a petition for clemency. A petition for clemency, after all, is directed to a State official, the governor, is sought after conviction for a crime, and is a form of review. See WASH. REV. CODE § 9.94A.260. Respondent advocates a narrower construction of the phrase, claiming that "State post-conviction or other collateral review" refers only to state judicial review, not to executive proceedings like clemency.

When confined solely to the words of § 2244(d)(2), both positions are somewhat plausible. Nowhere on its face does § 2244(d)(2) limit "State post-conviction or other collateral review" to judicial proceedings. On the other hand, § 2244(d)(2) does not explicitly include clemency petitions within its ambit. Nor is the phrase "State post conviction or other collateral review" as used in the section defined in the statute.

However, we are not confined solely to the language of § 2244(d)(2). Rather, "to determine the plain meaning of a particular statutory provision, and thus congressional intent, the court looks to the entire statutory scheme." *DeGeorge,* 219 F.3d at 936. Several other usages in surrounding provisions of the federal habeas statutes throw light on the sense in which Congress most probably used the term "State post conviction and other collateral review," indicating that the reference was only to court or other adjudicative proceedings, not to clemency applications addressed to the governor. See *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2124, 2127, 150 L.Ed.2d 251 (2001) (comparing text of § 2244(d)(2) to "the language of other AEDPA provisions" in order to illuminate Congress' intent with regard to the meaning of "State post conviction and other collateral review."); *S & M Investment Co. v. Tahoe Regional Planning Agency,* 911 F.2d 324, 328 (9th Cir.1990) ("When the same word or phrase is used in different parts of a statute, we presume that the

word or phrase has the same meaning throughout.").

First, as a general matter, what we are looking for, most broadly, is the meaning of "collateral review;" we know that the statute—by referring to "*other* collateral review" (emphasis added)—uses the term "State post-conviction ... review" as simply one type of "collateral review." Looking at the limitations provision, 28 U.S.C. § 2244(d)(1), helps to clarify the meaning of "collateral review." That section provides, as one of four alternative starting dates for the limitations period, "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactive to cases on collateral review." This subsection—which appears in the immediately preceding subsection to the one we are interpreting and also deals with limitations issues—plainly uses the term "collateral review" to refer to court proceedings. The Supreme Court does not, and could not, determine whether a governor in exercising his clemency powers should take into account a new Supreme Court case. *See also* 28 U.S.C. § 2255(3) (same usage in the context of § 2255 motions).

Second, there is specific evidence elsewhere in the statute that the term "State post-conviction proceeding" was itself intended to refer to proceedings associated with the judicial system. 28 U.S.C. § 2261 encourages the appointment of counsel in "State post-conviction proceedings" for death penalty defendants; application of special expedition requirements for federal death penalty habeas petitions depends upon state adoption of systems consistent

with federal statutory requirements for appointing such counsel. *See* 28 U.S.C. §§ 2261–2266. Not only is it unlikely that Congress would hinge federal habeas procedures upon appointment of counsel for clemency applications, but there is specific reference in § 2261 to "payment of reasonable *litigation* expenses," (emphasis added), "litigation" being a word that ordinarily refers to presentation of cases in court or court-like agencies.

Later in the section concerning the special, opt-in death penalty proceedings added by AEDPA is another provision that confirm that Congress had traditional adjudicative proceedings in mind when it referred to "State post-conviction and other collateral review." The tolling provision for the special death penalty opt-in procedures is structured a bit differently from the tolling provision with which we are concerned. Rather than stating "[t]he time [that] ... shall not be counted," as does § 2244(d)(2), § 2263(b) states that "[t]he time requirements [for filing federal habeas petitions] shall be tolled ..." and then specifies the beginning and ending of the tolled periods.

The provision pertinent here states as a tolled period the time "from the date on which the first petition for post-conviction review or other collateral relief is filed until the final State *court* disposition of such petition." (emphasis added). Just as *Duncan* regarded this section as informative on the question whether Congress intended in § 2244(d)(2) to include federal habeas petitions within the tolling period, so the same section suggests that "post-conviction" and "collateral" relief refer to *court* proceedings, not to applications for executive clemency.[2] As used in

2. The phrasing of the two tolling provisions, it is true, differs in a minor detail, with § 2244(d)(2) referring to "collateral relief" rather than "collateral review." *Duncan* did

not ascribe any intentional distinction between the two sections for that reason, concentrating instead on the word "collateral" and the identical phrase "post-conviction re-

§ 2263(b), the reference to "final State court disposition" must mean that the petitions in question for "post-conviction review or other collateral relief" were filed in court in the first place; otherwise, there could not be a "final State court disposition." Thus, the ending trigger in § 2263(b) can only indicate that the drafters used the terms repeated in the two sections to refer to proceedings filed in a court.

The overall scheme of the AEDPA amendments is consistent with the conclusion that "post conviction and other collateral review" is judicial proceedings. Analyzing AEDPA in related circumstances, we have stated that § 2244's statute of limitations provision, and its concomitant tolling exception, must be read in context with the exhaustion requirement of 28 U.S.C. § 2254(c). *See Nino,* 183 F.3d at 1005. The Supreme Court, in fact, recently observed that "[t]he tolling provision of § 2244(d)(2) balances the interests served by the exhaustion requirement and the limitation period." *Duncan v. Walker,* 121 S.Ct. at 2128. Reading § 2244(d)(2)'s phrase "State post-conviction or other collateral relief" in light of § 2244(d)(1)'s limitations period and § 2254(c)'s exhaustion requirement confirms that clemency proceedings do *not* toll AEDPA's statute of limitations.

■ AEDPA's exhaustion doctrine requires a habeas petitioner to "give the state *courts* one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established *appellate review process.*" *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (emphases added); *see also Rose v. Lundy,* 455 U.S. 509, 518–19, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from *state courts,* thus giving those *courts* the first opportunity to review all claims of constitutional error.") (emphases added). Similarly, "[t]he 1 year limitation period of § 2244(d)(1) quite plainly serves the well-recognized interest in the finality of *state court judgments.*" *Walker,* 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (emphasis added); *see also Nino,* 183 F.3d at 1005 ("Tolling the federal statute of limitations while the state prisoner is properly adhering to exhaustion requirements reinforces the orderly presentation of claims to the appropriate *state tribunals* and obviates the need for federal action prompted by AEDPA's statute of limitations.") (emphasis added); *Tillema v. Long,* 253 F.3d 494 (2001) (quoting *Nino,* 183 F.3d at 1007) ("Tolling ADEPA's limitations period during the pendency of a state *collateral proceeding* that attacks the pertinent judgment is consistent … with the principle that *state courts* should be afforded 'the first opportunity to review the prisoner's claim and to provide any necessary relief.'").[3]

---

view" that appears in both sections. 121 S.Ct. at 2127. We therefore also treat the two phrases as sufficiently similar to suggest parallel interpretations.

3. *Tillema* recognized that the AEDPA exhaustion and statute of limitations/tolling provisions are "distinct requirements," 253 F.3d at 502, as the statute provides for tolling during the pendency of state collateral proceedings that concern claims not raised in the federal habeas petition. *Tillema* also, however, stressed that the reason Section 2244(d)(2) tolls for post-conviction and other collateral proceedings that a petitioner is not required to exhaust is to "reinforce comity and respect between our respective *judicial* systems." *id.* at 501 ((emphasis added), *quoting Nino,* 183 F.3d at 1007); *see also Tillema,* 253 F.3d at 501 ("[W]hen a *state court* is willing to entertain a challenge to the validity of the pertinent judgment, a result that is favorable to the petitioner will ordinarily avert any federal intervention regarding the legality of the prisoner's continued confinement.") (emphasis

A state clemency petition, of course, is directed to and acted on by the state's executive branch wholly separate from the state judiciary, its judgments, and its appellate review process. *See Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998); *see also* WASH. REV. CODE § 9.94A.250 (stating that the clemency and pardons board is a "board within the office of the governor," whose members are appointed by governor and appointed by the state Senate). In Washington, the Governor may grant clemency in "extraordinary cases," *see* WASH. REV. CODE § 9.94A.260, regardless of whether the petitioner is being held "in violation of the Constitution or laws or treaties of the United States," as is required for federal habeas relief. *See* 28 U.S.C. § 2241(c)(3). Furthermore, the Governor's clemency authority appears plenary and final. *See* WASH. REV. CODE § 9.94A.394 ("Nothing in chapter 1, Laws of 1994 shall ever be interpreted or construed as to reduce or eliminate the power of the governor to grant a pardon or clemency to any offender on an individual case-by-case basis."). The state judiciary, as far as we can tell, has no authority to review the Governor's clemency decisions. *See* WASH. REV. CODE §§ 9.94A.250, 994A.260, 994A.394.

Considering the twin purposes of AEDPA—(1) accelerating the federal habeas process, and (2) promoting comity between the federal and state judiciaries by protecting the state courts' role in the enforcement of federal law, *see Nino,* 183 F.3d at 1004–05 (citation omitted)—we conclude that a state prisoner's petition for clemency is not "State post-conviction or other collateral review," and therefore does not toll AEDPA's limitations clock.

In coming to this conclusion, we respectfully reject two arguments that Malcom claims demonstrate that § 2244(d)(2)'s tolling provision was intended to encompass executive actions like clemency proceedings.

First, Malcom closely parses the phrase "State post-conviction or other collateral review" and argues that "other collateral review" must refer to clemency petitions or else "other collateral review" would be no different from "post-conviction" review. According to Malcom, unless we construe "other collateral review" to include executive actions, that portion of § 2244(d)(2) would be rendered meaningless.

We agree that "[s]tatutes must be interpreted, if possible, to give each word some operative effect." *Walters v. Metropolitan Educ. Enter., Inc.,* 519 U.S. 202, 209, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). However, we disagree with Malcom that the phrase "other collateral review" must refer to clemency proceedings to avoid being mere surplusage. As the Supreme Court recently observed:

> [I]t is possible for "other collateral review" to include review of a state court judgment that is not a criminal conviction ... *For example, federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment or a state court order of civil contempt* ... These types of state court judgments neither constitute nor require criminal convictions. Any state collateral review that is available with respect to these judgments, strictly speaking, is not post-conviction review.

*Walker,* 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (emphasis added).

We recognize that the issue presented in *Walker* (whether a state prisoner's federal

added). *Tillema* is therefore entirely consis-

tent with our holding today.

habeas petition tolls AEDPA's clock) is different from the issue presented in this case (whether a state prisoner's petition for clemency tolls AEDPA's clock). We acknowledge also that *Walker*'s inclusion of "state court order[s] of civil commitment" and "state court order[s] of civil contempt" as forms of "other collateral review" does not appear to be exhaustive. *See id.*

However, we find telling the fact that the Court listed only state *court* adjudications as examples of "other collateral review," and made absolutely no mention of executive actions. *See id.* This distinction becomes even more apparent considering the fact that § 2244(d)(2)'s tolling provision must be read in conjunction with the exhaustion and limitations provisions. *Walker*, in fact, expressly stated that "[t]he exhaustion requirement . . . ensures that *state courts* have the opportunity to fully consider federal-law challenges to a state custodial judgment" and "[t]he 1 year limitation period of § 2244(d)(1) quite plainly serves the well-recognized interest in the finality of *state court judgments*." *Id.* (emphases added).

 In short, the phrase "other collateral review" need not refer to executive actions, like clemency, to avoid being rendered superfluous. Instead, we hold that "other collateral review" refers to other forms of state court adjudications—like state court civil commitment orders or state court orders for civil contempt—adjudications which may be invoked in the habeas context irrespective of any criminal conviction triggering "post-conviction" review.

Second, Malcom argues that because § 2244(d)(2)'s plain language is ambiguous as to whether "State post-conviction or other collateral review" encompasses executive actions, we should look to the legislative history behind the statute. Citing language from a published district court opinion, *Sperling v. White*, 30 F.Supp.2d 1246, 1251 (C.D.Cal.1998), Malcom contends that certain comments made by Senator Orrin Hatch, one of AEDPA's chief architects, demonstrate that Congress intended "other collateral review" to include clemency proceedings. We reject this argument for two reasons.

Initially, because of the light thrown on the meaning of "State post-conviction and other collateral review" by the other provisions of AEDPA, we do not find the statutory language ambiguous, and therefore we need not resort to legislative history to determine § 2244(d)(2)'s meaning. *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) ("Resort to legislative history is only justified where the face of the Act is inescapably ambiguous . . . .") (Jackson, J., concurring). Furthermore, even if we were to conclude that the statutory language is ambiguous, the legislative history is not helpful to Malcom's position. A debate took place between Senators Levin and Hatch about what a habeas petitioner would have to show in order to file a successive habeas petition. *See* 141 Cong. Rec. S7803–01. Senator Levin suggested that a petitioner need only show that he was "probably actually innocent." *Id.* at S7824. Senator Hatch recommended a tougher standard, clear and convincing innocence, because, in his words:

> [T]he appellate courts have upheld the conviction and the State habeas petitions have thus been exhausted. In other words, there has been the trial, there has been a review by the intermediate court, there has been a review by the supreme court of the State. The State procedures have been exhausted. It also means that petitions to the Supreme Court have been filed. In other words there have been two rounds of

State review both of which were subject of a petition for certiorari to the Supreme Court of the United States of America, and that both of those Supreme Court petitions have been denied; *and at least in collateral cases, as a general rule, the Governor also has ruled on the case because there has been a petition for clemency; and the [Governor] has also reviewed the claim in a clemency petition and has denied it, too.* At this point, the prisoner's conviction has been proved beyond a reasonable doubt.

*Id.* at S7825 (emphasis added).

Malcom claims that Senator Hatch's comments demonstrate that the phrase "State post-conviction and other collateral review" encompasses clemency petitions. *See Sperling,* 30 F.Supp.2d at 1251. For at least two reasons, Malcom's contention is unpersuasive. The debate between Senators Levin and Hatch concerned the successive petitions provision, § 2244(b)(2), not the limitations tolling provision at issue in this case, § 2244(d)(2). Further, we do not know whether other legislators shared Senator Hatch's (supposed) inclusion of clemency proceedings within the definition of "State post-conviction or other collateral review." Notably, during the same hearing, other legislators, when referring to "State post-conviction or other collateral review," delineated only judicial proceedings, making no mention of executive actions. Senator Nickles, for example, stated:

> [O]ur [current] habeas system does not promote justice. The availability of habeas corpus to State prisoners, beyond the various remedies and *layers of review available in State courts,* has little or no value in avoiding injustices.... The typical applicant has already secured extensive review of his case in *State courts, having pursued a State*

*appeal and often having initiated collateral attacks in State courts.*

*Id.* at S7820 (emphases added). For these reasons, even if we were inclined to consider the legislative history of AEDPA, we conclude that the record does not demonstrate in "plain and unambiguous" language that Congress meant to include clemency petitions in § 2244(d)(2)'s definition of "State post-conviction or other collateral review." *See United States ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1187–88 (9th Cir.2001).

## C. Equitable Tolling

 Because Malcom's clemency petition did not toll AEDPA's limitations clock, her federal habeas petition was untimely unless we find that she is entitled to equitable tolling. Section 2244(d)(1)'s limitations period may be equitably tolled "if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *See Calderon v. United States Dist. Ct. for the Cent. Dist. of Cal. (Kelly),* 163 F.3d 530, 541 (9th Cir. 1997) (en banc) (citation omitted).

 Malcom has not identified any circumstances *beyond her control* that made it impossible for her to file a timely federal habeas petition. It was Malcom and her counsel's informed collective decision to pursue clemency before filing a second personal restraint petition, and instead of filing a federal habeas petition within AEDPA's one-year window. *See Kreutzer v. Bowersox,* 231 F.3d 460, 463 (8th Cir. 2000) ("We agree with those courts that have found that counsel's confusion about the applicable statute of limitations does not warrant equitable tolling."); *cf. Sandvik v. United States,* 177 F.3d 1269, 1271– 72 (11th Cir.1999) (declining to equitably toll AEDPA's clock where Sandvik's attorney elected to use ordinary mail, rather than expedited mail, to send petition).

Neither the State of Washington or the federal court in any way coerced Malcom into petitioning for clemency before pursuing other available avenues of relief that would have avoided the predicament in which she now finds herself. *See Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000) ("There is no allegation in this case that the State of Maryland contributed in any way to Harris's delay in filing his petition."); *Kelly,* 163 F.3d at 541 (holding that the district court's "stay of the proceedings prevented Kelly's counsel from filing a habeas petition and, in itself, justifies equitable tolling"). The decision to seek clemency from the governor of Washington was entirely Malcom's decision to make. With 20/20 hindsight, the decision may have been unfortunate, but it was not beyond her control.

Malcom's contention that her daughter's alleged recantation and the ensuing defense investigation were beyond her control is similarly misplaced. The district court found as a matter of fact that Malcom learned about her daughter's recantation by December, 1996, at the latest. This factual finding is supported by the record and is not clearly erroneous. *See Miles,* 187 F.3d at 1105 (noting that district court's factual findings in habeas proceedings are reviewed for clear error).

Malcom fails adequately to explain why she waited over thirteen months—until February 10, 1998—to file her second personal restraint petition, a petition which, if "properly filed," would have tolled AEDPA's limitations clock. *See Dictado II,* 244 F.3d at 727–28. At oral argument, Malcom's lawyer candidly admitted that the reason he didn't file Malcom's second personal restraint petition until February, 1998, was because he had already filed a clemency petition, and the Washington State Clemency and Pardons Board granted oral argument on the matter. Malcom

and her lawyer understandably chose to continue with the clemency proceedings before filing Malcom's second personal restraint petition. As discussed above, however, this decision to forgo federal remedies while clemency was a possibility, though understandable, was not beyond Malcom's or her counsel's control. *See Kreutzer,* 231 F.3d at 463.

Accordingly, Malcom is not entitled to equitable tolling.

## III

### Conclusion

For the reasons explained above, we AFFIRM the district court's determination that Marilynn Malcom's federal petition for habeas corpus was not timely filed.