**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph BRONSTEIN,**
**Defendant-Appellant.**

No. 79-1600.

United States Court of Appeals,
Ninth Circuit.

April 21, 1980.

Rehearing Denied May 29, 1980.

Neil F. Horton, Oakland, Cal., argued for defendant-appellant; Earl D. Osborn, II, Robert H. Solomon, Oakland, Cal., on brief.

Jerald E. Olson, Seattle, Wash., for plaintiff-appellee.

Before CHOY and FERGUSON, Circuit Judges, and POOLE,* District Judge.

FERGUSON, Circuit Judge:

Defendant Joseph Bronstein pled guilty, pursuant to the terms of a plea agreement, to one count of subscribing a false corporate tax return and one count of conspiracy. The district court accepted the defendant's guilty plea and imposed sentence. Subsequently, the defendant filed a motion under Rule 35 of the Federal Rules of Criminal Procedure [1] to correct a sentence imposed in an illegal manner, claiming that the government had breached its obligations under the plea agreement. The motion was denied, and the defendant appeals. We vacate the judgment below and remand for resentencing.

I. FACTS

The defendant was charged in a multiple-count indictment dated March 19, 1979, with subscribing false individual and corporate tax returns and with conspiracy related to these tax offenses. Bronstein's brother Irving and John Pelletier, the corporation's comptroller, were charged under the same indictment with conspiracy and aiding and abetting.[2] The indictment charged the defendant, as president of the family corporation, with diverting funds from the corporation and concealing his activities by writing cash purchase slips on non-existent pur-

---

* The Honorable Cecil F. Poole, United States District Judge for the Northern District of California, sitting by designation.

1. The government has not contested the use here of the Rule 35 motion to correct a sentence imposed in an illegal manner.

2. Irving Bronstein's case was severed from that of the defendant and Pelletier's.

chases. Because of inaccuracies in the corporate records resulting from the defendant's activities, the corporate tax return filed for 1973 and signed by the defendant did not correctly reflect the corporation's taxable income. An amended return for 1973 was filed in 1975, but this return accounted for only about one-third of the diverted funds.

Before trial, Bronstein filed a motion to dismiss the count relating to the 1973 corporate tax return, claiming that he had voluntarily disclosed the errors in the original tax return to the I.R.S. This motion was denied.[3]

On the sixth day of trial, both Bronstein and Pelletier agreed to plead guilty pursuant to a written plea bargain. Bronstein pled guilty to the conspiracy count and to the count which charged him with subscribing the original false corporate tax return for 1973. The section of the plea agreement in issue here provided:

> The Government will waive its right of allocution and will remain silent at the time of sentencing except to correct any factual misrepresentations which may occur.

The agreement also expressly provided the defendants the right to call witnesses at sentencing. The court accepted the plea agreement and set sentencing for July 20, 1979.

Prior to the July 20th hearing, Bronstein's attorney, Robert Shoemaker, sent a presentence letter to the court urging the court to grant probation. Shoemaker pointed out that Bronstein had authorized him, as the corporation's attorney, to disclose the error in the tax return filed for 1973 to the I.R.S. and that Bronstein had asked Pelletier to file a correct amended return for 1973 and a correct return for 1974. Shoemaker added that any inaccuracies in the returns were Pelletier's responsibility.

The district court did not sentence Bronstein on July 20th. Instead, the trial judge advised the parties that he wanted to learn more about the I.R.S. policy regarding voluntary disclosure and would therefore not impose sentence at that hearing.

The government then presented two witnesses who testified as to the I.R.S. policy and its application to Bronstein and Pelletier. The defense called one witness, Shoemaker, who testified that Bronstein revealed to him in April or May, 1974, that Bronstein had been taking cash from the corporation. Shoemaker testified as to discussions on this point with Bronstein at subsequent meetings, and added that Bronstein authorized him in January, 1975, to disclose to the I.R.S. the error in the return filed for 1973. He also testified that Bronstein instructed Pelletier to prepare a correct amended return for 1973 and a correct return for 1974. After this meeting, Bronstein, his brother and his father[4] each redeposited $400,000 to the corporation in order to pay the taxes.

Defense counsel objected during cross-examination of Shoemaker and stated that although factual comments by the prosecution were not objectionable, comments as to the recommended nature and severity of the sentence were impermissible under the plea bargain. The government responded that it was acting within the boundaries of the plea agreement since it was correcting the factual misrepresentation that Bronstein had attempted to make a voluntary disclosure. The court ruled that this hearing was not the "time of sentencing" and that the government was therefore not bound by the plea agreement.

After the testimony was taken, defense counsel addressed the court, and commented that Bronstein should "get credit" for having issued instructions to file an

---

**3.** An unofficial I.R.S. policy provides that voluntary disclosure is an important factor in a decision to forego criminal prosecution. We assume that Bronstein argued that because he attempted to voluntarily disclose the error in

the return filed for 1973, he should not have been prosecuted.

**4.** Bronstein's father was an unindicted co-conspirator who died prior to the indictment.

amended return and for attempting to disclose the errors to the I.R.S. If the amended return was also incorrect, the defense counsel urged, Pelletier, not Bronstein, was to blame. Bronstein had at least made a good-faith effort to correct the error.

The court then asked for the government's position. The government responded that (1) Bronstein did not in fact rely on Pelletier to file correct returns; (2) Bronstein had been withdrawing money from the corporate account from 1970–1974; (3) Bronstein was not truly repentant when the conversations with Shoemaker took place since he was still secretly withdrawing funds from the corporation; (4) no voluntary disclosure had taken place since the amended return filed in 1973 was inaccurate, as was the return filed for 1974, and the 1970–1972 returns were never amended; (5) Bronstein had failed to cooperate with the subsequent I.R.S. investigation; (6) Bronstein must have known that the amended return for 1973 was incorrect; and (7) Bronstein had committed other wrongful acts, including directing his employees to misrepresent the weight of paper brought to Bronstein's plants for handling.

On August 3, 1979, Bronstein was sentenced concurrently to four years on the conspiracy count and one year on the substantive tax count. He was fined $10,000 on the conspiracy count and $5,000 on the tax count, and ordered to pay a portion of the costs of prosecution amounting to $5921.[5] The government was silent at this proceeding. On August 20, 1979, Bronstein filed a Rule 35 motion to correct a sentence imposed in an illegal manner. The court below denied the motion, finding that the statements made by the government at the July 20th hearing were within the factual misrepresentation exception spelled out in the plea agreement and were directed to the issue of voluntary disclosure.

## II. INTERPRETATION OF THE PLEA AGREEMENT

This court's decision in *United States v. Arnett,* No. 79–1243, (9th Cir., Nov. 26, 1979), sets out the law of this circuit regarding the interpretation of plea bargains. The defendant in *Arnett* pled guilty to one count of a multiple-count indictment in return for the government's promise to take no position as to the appropriate sentence. At the sentencing hearing, the government did not oppose Arnett's request for probation, but Arnett was nonetheless sentenced to prison. Two days later, Arnett moved for a reduction of sentence[6] under Rule 35, but did not advance any new reasons warranting leniency. The government responded to this motion in writing, stating that no new reasons for leniency had been advanced, circumstances had not changed, and that there was no reason for the court to change its mind. Arnett moved to strike the government's response, claiming that it constituted a violation of the plea agreement. The government argued that the time of sentencing had passed and that the plea agreement was therefore no longer in effect. The district court found for the government, and the Rule 35 motion was denied.

On appeal, this court ruled that ambiguities in plea bargains are to be resolved by looking to the facts of each case since "(w)hat the parties agreed to in the . . plea bargain is a question of fact." *Id.,* at

---

**5.** Pelletier was sentenced to the same terms of imprisonment and ordered to pay an identical share of the costs of prosecution, but was not fined. He did not file a Rule 35 motion nor has he attacked the judgment or sentence in any other way.

**6.** At least three distinct motions can be made pursuant to Rule 35: a motion to correct an illegal sentence, a motion to correct a sentence imposed in an illegal manner, and a motion for reduction of sentence. Each is subject to different standards. *See Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *United States v. Stevens,* 548 F.2d 1360 (9th Cir.), *cert. denied,* 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977); *United States v. Ellenbogen,* 390 F.2d 537, 543 (2d Cir.), *cert. denied,* 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968).

——. Good-faith disputes as to the terms of a plea agreement are to be resolved by the district court in which the plea was originally submitted. Remand was therefore appropriate for a finding on the intended meaning of "time of sentencing."[7]

The *Arnett* holding regarding the intent of the parties is inapplicable to the case before us. Here, unlike *Arnett*, the intent of the parties becomes clear upon an examination of the language of the plea agreement and the conduct of the parties. Consequently, there is no need for remand for the purpose of interpreting the plea agreement.

## A. Time of Sentencing

In *Arnett* there was a legitimate factual dispute between the parties regarding the applicability of the plea agreement to a post-sentence proceeding. That kind of dispute did not exist in the instant case with respect to the July 20th hearing. The government has never argued that the plea agreement was not in force at the July 20th hearing. Instead, the government's sole contention is and has been that its comments did not violate the plea agreement. For example, the government's response to Bronstein's objection at the July 20th hearing (that the government was violating the agreement) was that it was attempting to correct the factual misrepresentation that Bronstein had voluntarily disclosed the errors in the tax return for 1973 to the I.R.S.[8] This clearly indicates that the government perceived the plea agreement to be in effect at that time. Accordingly, it is clear that the intent of the parties, as demonstrated by their conduct and by the language of the agreement, was that the agreement cover the July 20th hearing.

## B. The "Factual Misrepresentation" Language

Remand for findings is not required on the intended meaning of the "factual misrepresentation" language contained in the plea agreement. The agreement is clear on its face.

At the July 20th hearing, the defense represented that Bronstein had made a good-faith effort to voluntarily disclose errors in the corporate return for 1973 and had relied on Pelletier to file a correct amended return. The majority of the government's comments (enumerated 1–6 above) were made in accordance with the terms of the plea agreement in an attempt to correct the factual representation that Bronstein had attempted to make a voluntary disclosure.

However, the government's comments regarding Bronstein's alleged and unrelated criminal conduct were not directed to the representation regarding voluntary disclosure or to any other factual misrepresentation made by the defendant, and were therefore beyond the limits set out in the plea agreement. Resentencing was warranted because of this breach of the plea agreement, *Santobello v. New York, supra*, 404 U.S. at 263, 92 S.Ct. at 499, and the trial judge erred in denying the defendant's motion. Remand for resentencing is therefore mandated.[9]

The decision below is vacated. We remand to the district court for resentencing

---

7. *Arnett* is based on the Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in which the Court held that governmental commitments made pursuant to plea bargains must be fulfilled. If the government breaches its duties, resentencing is warranted.

8. The *court* below initially responded to the defendant's objection by ruling that the hearing was *not covered by the plea agreement since* sentence would not be imposed at that time. The *government's* response indicated its perception that the agreement was in effect. It should be noted that the trial court abandoned its earlier ruling in passing on the Rule 35 motion, when it held that the government had not violated the agreement.

9. The government urges that its comments regarding other criminal conduct were permissible because they were made in response to questions from the court. *United States v. Garcia*, 544 F.2d 681 (3rd Cir. 1976), is cited in support of this contention. However, *Garcia* does not support the argument that responses to factual questions from the court which ignore a plea bargain are permissible.

in light of *Santobello v. New York, supra,* 404 U.S. at 263, 92 S.Ct. at 499.

The *Garcia* defendants pled guilty to drug charges pursuant to a plea bargain under which the government promised to refrain from taking a position at sentence. At the sentencing hearing, the court asked the prosecutor if the defendant had cooperated and the prosecutor responded. The Third Circuit held that the government's response did not constitute a breach of the plea agreement since "(a)nswer-

ing a factual question put to the prosecution by the court is not, in our view, *taking a position, i. e., making a recommendation,* at sentencing." *Id.* at 685 n.2 (emphasis added). There was no breach of the plea bargain in *Garcia* which was then excused by virtue of its occurring in response to questions from the court; rather, no breach was found at all.