Liza BROWN, Petitioner–Appellant,

v.

Susan E. POOLE, Respondent–Appellee.

No. 01–56660.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2003.

Filed Aug. 4, 2003.

Ronnie Beth Lasky, Proskauer Rose LLP, Los Angeles, CA, for the petitioner-appellant.

David F. Glassman, Deputy Attorney General, State of California, Los Angeles, CA, for the respondent-appellee.

Before: BROWNING, B. FLETCHER and SILVERMAN, Circuit Judges.

Opinion by Judge BETTY B. FLETCHER; Dissenting opinion by Judge SILVERMAN.

BETTY B. FLETCHER, Circuit Judge:

Liza Ann Brown petitions for a writ of habeas corpus. Brown was charged with first-degree murder for shooting her husband in what she claimed was self-defense. She and her husband were in the process of divorce when he came into her living area and, she claims, violently demanded a share of the proceeds from the sale of a car to which she was entitled by their separation agreement. Brown now asks that the court order specific enforcement of the terms of her 1986 plea agreement on the reduced charge of second-degree murder: *i.e.*, order her release from prison. She argues that the terms of the plea agreement clearly stated that if she did not incur disciplinary infractions during her time in prison, she would be released in half of the fifteen(or seventeen-) year minimum term stipulated in the agreement. She has now served more than seventeen years in prison, without disciplinary infractions and without being paroled. We grant the writ.

## I. *FACTS AND PROCEDURE*

After Brown's trial was underway, but prior to commencement of her defense, the prosecutor reached a "negotiated settlement" with her lawyer to reduce the first-degree murder charge to second-degree murder in exchange for her guilty plea. This plea agreement was oral. The plea colloquy was conducted by the prosecutor, who asked Brown the necessary questions and conveyed the terms of the agreement. We reproduce the relevant sections of it in full:

PROSECUTOR: The deal is that we will not proceed on the murder in the first degree. The murder in the first degree is punishable by 25 years to life in state prison. Murder in the second degree is punishable by 15 years to life in the state prison. The use of a firearm, your personal use of a firearm, a handgun in this case, makes you ineligible for probation. The judge must send you under the law to the state prison. Do you understand that?

BROWN: I do.

[Following is a page of discussion of the potential two-year enhancement for personal use of a firearm, regarding which the government promised neutrality.]

PROSECUTOR: Now other than what I have told you right now in court today at this moment, [have] there been any other promises made to you of lesser sentence, probation, reward, immunity, anything else, in order to have you change your plea to guilty?

BROWN: No, not at all.

PROSECUTOR: All right. What I have said today right now to you in open court, that's the deal as you understand it; is that correct?

BROWN: Yes, I do.

PROSECUTOR: Have you discussed this case thoroughly with your attorney, Mr. Castillo?

BROWN: Yes, we have.

PROSECUTOR: And have you discussed it with other members of your family and friends who might give you some input into this case?

BROWN: No.

PROSECUTOR: Well, are you satisfied that you understand what's going on?

BROWN: Yes, I do.

PROSECUTOR: You are entering this plea freely and voluntarily, is that correct?

BROWN: Yes, I do.

PROSECUTOR: Now in order to accept a plea of guilty from you—well, I should tell you further that when you are sentenced to the state prison, you must serve a minimum of half of that

sentence in the state prison; do you understand that?

BROWN: Yes, I do.

PROSECUTOR: Now, if you behave yourself at the state prison, as most people do, and I am inclined to believe that you will, you are going to get out in half the time. You get half of that 15 years off, or half of that 17 years off with the imposition of the extra two years, for good time/work-time credits. That's up to you. Do you understand that?

BROWN: Yes.

PROSECUTOR: Okay. So you kind of got the key to the door in your pocket when you get up there.

BROWN: Okay.

PROSECUTOR: If you mess up in the state prison, you are liable to be there until they feel that it is satisfactory that you can be released. But under no circumstances are you going to be released in less than half of that 17 years. Do you understand that?

COURT: Or half of the 15 years.

PROSECUTOR: Or half of the 15, if you so choose to stay that extra two years. Do you understand that?

BROWN: Yes, I do.

After more than seven additional transcript pages' worth of colloquy with the prosecutor, none of it relevant here, the court made the necessary findings as to knowing and voluntary entry into the plea and then accepted her plea. At sentencing, the court did not impose the two-year enhancement. Brown began serving her 15 years-to-life prison sentence on March 27, 1986.

## II. *DISCUSSION*

### A. *STATUTORY TOLLING*

 As a preliminary matter, the state argues that Brown's claim is barred by the one-year time limit that the Antiterrorism and Effective Death Penalty Act ("AEDPA") allows for bringing a federal habeas petition. 28 U.S.C. § 2244(d). This limit is tolled while the petitioner's case is pending before the state courts. *Id.; see Carey v. Saffold,* 536 U.S. 214, 225, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (construing tolling under California's indeterminate system as turning on petitioner's unreasonable delay in seeking higher court review), *id.* at 220, 122 S.Ct. 2134 ("until the application [for state collateral review] has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.' "). Brown, after filing her state habeas petition in the Superior Court of California, asked that it be taken off calendar for a time in the hope and expectation that her upcoming parole hearing would render it moot. After parole was denied, she asked the court to return the case to calendar, and moved for reconsideration of her habeas petition, which the Superior Court denied. The district court declined to address the AEDPA statute of limitations issue, finding that it could resolve the case on the merits. We consider this question *de novo. Malcom v. Payne,* 281 F.3d 951, 955–56 (9th Cir.2002).

The state urges that Brown does not warrant statutory tolling for the period during which her habeas petition was removed from the court calendar. But Brown had not abandoned her claim for post-conviction relief during this period; she had merely asked that it be taken off calendar for what no one has argued were other than legitimate reasons. No lower court has found that she was not making "proper use of state court procedures," *Nino v. Galaza,* 183 F.3d 1003, 1006 (9th Cir.1999) nor that in pursuing her application for habeas relief she was not *"properly* pursuing[her] state collateral remedies," *Welch v. Newland,* 267 F.3d 1013, 1016–17 (9th Cir.), *mandate stayed,* 269 F.3d 1124 (2001) (emphasis added), during the period

during which her petition remained in the Superior Court, although not on calendar. We are not barred from hearing her petition on collateral review.

## B. *THE PLEA COLLOQUY*

Brown asserts that she understood that if she did not violate prison disciplinary rules—a condition with which she has complied—she would be released in seven-and-a-half years.[1] The government asserts that the prosecutor had no right to, and in fact did not, promise such terms.

■ We construe the plea agreement using the ordinary rules of contract interpretation. "Plea agreements are contractual in nature and are measured by contract law standards." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir.1993). The terms of oral plea agreements are enforceable, as are those of any other contracts, even though oral plea agreements are not encouraged by reviewing courts. *See, e.g., United States v. Monreal*, 301 F.3d 1127, 1133 (9th Cir.2002).

■ While interpretation of the terms of a plea agreement often rests on questions of fact, this one rests on a question of law. There is no factual dispute about what the prosecutor said to Brown during the colloquy. Although the initial understanding when counsel agreed to halt the trial was apparently that the charge would be reduced from first-degree murder and that Brown would plead to second-degree murder, the prosecutor added other concessions before the judge accepted the plea. The question is whether the additional concessions are binding. Brown's due process rights conferred by the federal constitution allow her to enforce the terms of the plea agreement. *See Santobello v. New York*, 404 U.S. 257, 262, 92

S.Ct. 495, 30 L.Ed.2d 427 ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."); *see also United States v. Hallam*, 472 F.2d 168, 169 (9th Cir.1973) ("It is clear from *Santobello* ... that due respect for the integrity of plea bargains demands that once a defendant has carried out his part of the bargain the Government must fulfill its part.").

Until the judge accepted Brown's plea, the terms of the contract were not fixed. Thus, the material term promising relief when half the minimum sentence was completed disciplinary-free was part of the agreement at the time the judge accepted the plea. The agreement that Brown would waive her constitutional rights in exchange for a reduced sentence was accepted and final only at the moment that the judge made the requisite factual findings and accepted the plea. Cal.Penal Code § 1192.5. This occurred after the prosecutor promised Brown that she would be released upon completing half the minimum term if she had a clear disciplinary record in prison. Until the court's acceptance of the plea, Brown could reject the agreement.

■ The instant case differs from many in which the interpretation of a plea agreement is at issue because the question is not what the terms mean, but whether they are part of the contract. Still, the same guiding principles apply. "[W]e employ *objective* standards—it is the parties' or defendant's *reasonable* beliefs that control.... The construction we adopt, however, incorporates the general rule that ambiguities are construed in favor of the defendant. Focusing on the *defendant's*

---

**1.** This assumed that the two-year sentence enhancement would not be imposed, as was the case.

reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty." *De la Fuente,* 8 F.3d at 1337 n. 7 (citing *Mabry v. Johnson,* 467 U.S. 504, 507–11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)) (emphasis in original).

■ Brown heard and acknowledged the prosecutor's promises, and in the process of waiving her right to trial she accepted them as part of her bargain. "The intent of the parties becomes clear upon an examination of the language of the plea agreement and the conduct of the parties" during the plea colloquy. *United States v. Bronstein,* 623 F.2d 1327, 1329 (9th Cir. 1980). Where it is clear from context what would reasonably have prompted acceptance of the agreement, even in part, no further speculative factual inquiry is needed. *See, e.g., INS v. St. Cyr,* 533 U.S. 289, 322–23, 325, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (inferring based on general analysis of what would motivate defendants to accept plea agreements that particular defendant "almost certainly" relied on availability of particular relief).[2]

■ The state relies on one of the state court's rationales for rejecting the proposition that Brown could have relied upon the promise of early relief if she avoided disciplinary problems: that the minimum sentence at issue was always described during the colloquy as conditional. And so it was. The state court could not find, and we do not find, that Brown had an absolute right to be released after seven-and-a-half years. Rather, Brown agreed that she would garner the benefit of early release only if she provided the consideration of a spotless prison record for seven-and-a-half years. Contract terms do not become less en-

---

**2.** It is because we resolve this case as a matter of *law* that we have no need to dispute the factual determinations made by the state Court of Appeal as to what her actions ten years afterwards signified about Brown's understanding at the time of the plea. We would indeed defer to all factual findings of the state court that are reasonable "in light of the evidence presented in the state court proceedings," *Greene v. Henry,* 302 F.3d 1067, 1072 (9th Cir.2002) (citation omitted)—even if we did not ourselves find those findings particularly persuasive—if they were relevant. But, given the plain terms of the contract, the state court's factual inquiry into parol evidence here is unnecessary and inappropriate. *Harris v. Rudin, Richman & Appel,* 74 Cal. App.4th 299, 307, 87 Cal.Rptr.2d 822 ("[t]he objective intent as evidenced by the words of the instrument, not the parties' subjective intent, governs our interpretation.").

As a matter of law, the contract includes the disputed terms. These terms, plainly incorporated in the plea agreement by operation of law, were unambiguous. The standard we apply for construing their meaning is objective. The state court's unnecessary and improper inquiry into Brown's subjective intent contravened state contract law, which would bar consideration of such extrinsic evi-

dence gleaned many years after the plea. In so doing, the court's decision involves an objectively unreasonable application of *Santobello* in two ways: *Santobello* requires that the plea agreement be construed according to state contract law, and requires that the terms of a valid plea agreement be enforced. AEDPA therefore does not bar Brown's claim. *See* 28 U.S.C. § 2254(d)(1); *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (federal court "may grant relief under [AEDPA's] 'unreasonable application' clause if the state court unreasonably applies [the governing legal principles] to the facts of the particular case"); *see also Wiggins v. Smith,* 539 U.S. ——, 123 S.Ct. 2527, 2539, 156 L.Ed.2d 471 (2003) (rejecting dissent's contention that Court's hands were tied by state court's factual determinations regarding counsel's actions, because state court's conclusion that counsel had not been ineffective represented an improper application of the Court's precedent, and thus AEDPA § 2254(d)(1) did not bar grant of habeas relief). Given that the terms of the plea agreement were fixed by state contract law, we need not determine whether the gratuitous conclusion the state court reached as to Brown's subjective intent was adequately supported by the record.

forceable for their being conditional. *See St. Cyr*, 533 U.S. at 325, 121 S.Ct. 2271 (finding reasonable reliance in entering a plea bargain based on the possibility rather than certainty of relief).

■ The state also urges that the prosecutor had no right to offer Brown the deal that she maintains she reasonably understood and accepted, and therefore it is void. This may be a problem for the state, but not for Brown. *See United States v. Anderson*, 970 F.2d 602, 607 (9th Cir.1992) ("A plea induced by an unfulfillable promise is no less subject to challenge than one induced by a valid general promise which the government simply fails to fulfill."). Brown had no reason to know that the prosecutor's promises were improper. "*Santobello* itself rejected the relevance of prosecutorial culpability: 'It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial.... That the breach of agreement was inadvertent does not lessen its impact.' " *Mabry v. Johnson*, 467 U.S. 504, 511, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (citation omitted).

The state's argument does give occasion, however, to note that multiple procedural breakdowns occurred to produce the problem confronting us. The prosecutor could have aided Brown's understanding by reducing the terms of the plea agreement to writing. He could have made clear that his promise was in fact only a prediction. But beyond this—and despite his conducting the colloquy—the prosecutor was not the one running the courtroom. The judge, while not actively conducting the colloquy, was responsible for making sure that Brown understood the agreement. She could have, and should have, stepped in and corrected the prosecutor when he promised Brown early relief in exchange for good behavior. She in fact did correct him when he misstated the lowest potential minimum term. The judge's intercession could easily have clarified that the prosecutor had no power to make the commitment to the release time. But she did not intercede.

The final argument the state brings is that this court may not impose a new constitutional rule of criminal procedure on collateral review of a state conviction. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Our disposition of this case requires no such new procedural rule. *Santobello* clearly established the requisite legal principles long ago, and the state court's decision did not reasonably apply them.

### C. *REMEDY*

■ By all accounts, Brown kept her end of the bargain entered into in 1986, comporting herself as a model prisoner. The question of the breach of her plea agreement is therefore not academic; she is entitled to a remedy, and the remaining question is of what kind. The two available remedies are rescission of the agreement and specific performance. *See United ed States v. Olesen*, 920 F.2d 538, 540 (8th Cir.1990).

By serving almost ten years more than her plea bargain required—longer, incidentally, than the maximum sentence she could have received for voluntary manslaughter—Brown has met the terms of the agreed-upon bargain, and paid in a coin that the state cannot refund. Rescission of the contract is impossible under such circumstances; Brown cannot conceivably be returned to the status quo ante. That leaves specific performance as the only viable remedy. *See United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180, 184 (7th Cir.1977) (finding "[u]nder the circumstances of this case it would

be unjust to simply vacate the guilty plea, which theoretically would allow the state to reindict [defendant]. Since he has already performed his side of the bargain, fundamental fairness demands that the state be compelled to adhere to the agreement as well. [Citing *Santobello*.] Accordingly, [defendant] should be released from custody."); *United States ex rel. Ferris v. Finkbeiner*, 551 F.2d 185, 187 (7th Cir.1977) (*cert. denied*, 435 U.S. 932, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978)) (finding since defendant "has substantially begun performing his side of the bargain, it would not be fair to vacate the plea and require him to go through the procedure anew. Fundamental fairness can be had by limiting his term of custody to that portion of the sentence which comports with the bargain made."); *see also Carter v. McCarthy*, 806 F.2d 1373, 1377 (9th Cir.1986) (affirming district court's order releasing defendant from custody due to Rule 11 error, citing *Santobello*); *cf. Cunningham v. Diesslin*, 92 F.3d 1054, 1059 (10th Cir.1996) (implicitly recognizing the remedy of specific performance and release from prison but rejecting it on the ground that "[t]he undisputed fact is that mandatory parole was *not* a part of the plea offer") (emphasis added).

While the state argues that only the Board of Prisons has the authority to reduce a sentence, this rule cannot trump the constitutional consideration that the Board's discretion may apply only to those who are legitimately imprisoned. As we have found that Brown's plea agreement has been breached and that she has served her full sentence, Brown is no longer properly under the Board's authority. Our deference to the state's interpretation of its own laws does not extend to granting the state authority to hold a prisoner past the lawful period of her detention.

Brown has served the agreed-upon term for her crime, and more. The oldest purpose of the Great Writ is as "a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Blackledge v. Allison*, 431 U.S. 63, 72, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("[T]he very purpose of the writ of habeas corpus [is] to safeguard a person's freedom from detention in violation of constitutional guarantees."). The state has no further lawful authority to hold her in prison on this charge. There is no question as to the proper remedy. *United States ex rel. Baker v. Finkbeiner*, 551 F.2d at 184.

Consequently, we may, and do, order specific performance of Brown's plea agreement. The judgment of the district court is reversed. We grant the writ. Brown is ordered released from custody forthwith.

**WRIT GRANTED.**

SILVERMAN, Circuit Judge, dissenting:

Conspicuously missing from the majority's analysis is any meaningful discussion of the rationale employed by the California Court of Appeal in denying Brown's petition for a writ of habeas corpus. We cannot grant federal habeas relief just because we would have come to a different decision. State court decisions are subject to federal "habeas relief only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or based on an '*unreasonable* determination of the facts.'" *Early v. Packer*, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263 (2002), *quoting* 28 U.S.C. § 2254(d) (emphasis added by the Court).

The California Court of Appeal reviewed the entire record, not just the portion of the change-of-plea transcript quoted by the majority, and found that Brown knew that she had not been guaranteed release after serving half the minimum time with

good behavior, but only that she would be parole-eligible at that time.

Brown plead guilty on January 28, 1986. On February 28, 1986, Brown received a 15 years-to-life sentence and 135 days actual and conduct credits. Brown was committed on March 27, 1986. Not counting her precommittment [sic] credits, if Brown's claims were true, she would have been entitled to release no later than September 1993. However, Brown's Minimum Eligible Parole Date (MEPD) was set at January 4, 1995. *Nothing in the record indicates Brown objected to the January 4, 1995, MEPD.* Brown's Initial Parole Consideration Hearing was held on July 13, 1994. *Brown, who was represented by counsel, was denied parole. Brown did not claim she was entitled to release.*

On January 16, 1997, Brown, represented by the same attorney, again was denied parole. *Again, Brown did not argue she was entitled to release.* On March 26, 1998, *Brown, represented by a different attorney, again was denied parole.* The Board noted Brown had been discipline-free throughout her commitment, and had completed some education and self-help programs. However, as was true at her earlier hearings, Brown continued to minimize her responsibility for the crime, had not sought psychological counseling, and had not completed a vocation course of study. *Again, Brown did not claim she was entitled to release.*

\* \* \*

Brown's inaction is consistent with a belief that her parole was conditional, belying her claim that she would be released in seven and one-half years.

*In re Brown,* No. B128995, slip op. at 7–8, 12 (Cal.Ct.App. May 28, 1999) (emphasis added).

In other words, although represented by two different lawyers, Brown did not see fit to claim entitlement to release pursuant to her plea agreement until nearly three years after she says she should have gotten out. The California Court of Appeal held that, viewing the record in its entirety and in context, Brown knew and understood that seven-and-a-half years was merely her minimum time to parole eligibility. Even if one could find that Brown thought she had been promised release after seven-and-a-half of years of good behavior, it was at least reasonable to find that she knew she hadn't been. For that reason, federal habeas relief was correctly denied. I respectfully dissent.