Filed 9/30/13  P. v. Wright CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CLARENCE CURTIS WRIGHT,<br><br>        Defendant and Appellant. | A136431<br><br>(Mendocino County<br>Super. Ct. No. SCUK-CRCR-12-22480) |

Defendant Clarence Curtis Wright appeals from a judgment entered after he pleaded no contest to one count of inflicting corporeal injury on the mother of his children (Pen. Code, § 273.5, subd. (a)[1]).  He was sentenced to a probationary term of 36 months with the condition that he serve 240 days in county jail with credit for time served in actual custody of 44 days and conduct credit of 44 days.  On appeal Wright claims he is entitled to withdraw his plea because at the change of plea proceeding the prosecution induced him to change his plea by implied promises that were later violated at the sentencing proceeding.  We disagree with Wright's contentions, and accordingly, affirm.[2]

_____

[1]     All further unspecified statutory references are to the Penal Code.

[2]     We reject the Attorney General's argument that Wright's appeal is untimely.  On October 15, 2012, the 59th day after judgment, Wright was then incarcerated in county jail.  On that day, he signed a notice of appeal and application requesting a certificate of probable cause, both dated October 15, 2012, and gave the two-page document to a jail officer for mailing to the county clerk.  Consequently, under the "prison-delivery rule" (*In re Jordan* (1992) 4 Cal.4th 116, 130; see Cal. Rules of Court, rule 8.25(b)(5)), the notice of appeal and application are deemed to have been filed on October 15, 2012, and are timely.

1

**FACTS**

### A. Background

On July 5, 2012, Wright was arrested after the mother of three of his children reported to the police that he had physically assaulted her. Five days later, the district attorney filed a felony complaint charging Wright with one count of inflicting corporeal injury on the mother of his children (Pen. Code, § 273.5, subd. (a)).

### B. Change of Plea Proceeding

On July 24, 2012, at a change of plea proceeding, Deputy District Attorney Elizabeth Norman informed the court the parties were close to agreeing that Wright would plead guilty to the felony offense in exchange for the prosecutor's promise that she "would not be requesting state prison." Norman further informed the court that Wright was scheduled to start junior college classes the following month, and he was very interested in being able to participate in classes at that time. However, Norman requested that Wright remain in custody until sentencing. "But if we could set sentencing the second or third week in August hopefully we would be in a position to have Mr. Wright out and supervised and in a structured situation."

After a brief recess, defense counsel informed the court that Wright was prepared to enter a guilty plea to a violation of section 273.5 as a felony. Because Wright's college classes were starting the week of August 22, defense counsel asked the court to schedule sentencing as soon as possible as Wright and counsel were "hoping that the court and everybody would be satisfied with credit for time served." After further discussion, the court asked Wright if anyone had made any threats or promises in exchange for his plea other than what's been stated in open court "and that is that you would get no state prison at the outset." Wright replied, "No." Defense counsel interjected, "Well, your Honor, I think there's at least the hope or maybe expectation that he would be released from custody . . . to have enough time to get enrolled in school, which starts August 22nd." The court replied it would schedule sentencing on August 17, and would consider the issue at that time. "The promise is no state prison. I think the district attorney has indicated they want him to remain in custody until the time of

2

judgment and sentence." The court inferred from Norman's statements that the district attorney "would be willing to see [Wright] released from custody . . . at that time." However, Norman informed the court that its understanding was not correct. She explained, "We're going to be looking closely at the probation report and how things play out there. That's probably the case. [¶] He has a misdemeanor probation matter which this [offense] is a violation of. Normally in misdemeanor probations you're looking at between 10 and 30 days. [Defense] [c]ounsel has indicated [Wright] will have 40 days as of the time of sentencing. [¶] Probation may want him to do more time as part of a felony plea in a new offense. . . . [¶] So I don't think he'll be doing more jail time, but he may be doing more jail time. Probation will work with him as far as doing it on weekends or working around his college instead. [¶] I don't want him thinking that we're not [*sic*] agreeing to no jail time. There may be jail time, and we'll look at the probation report to decide what's appropriate." At that point, the court granted defense counsel's request to speak with his client off the record. The court expressly stated that its earlier understanding of the prosecution's position — that they were not going to ask for more jail time at sentence — "apparently is not their position." Similarly, it was not the court's position that Wright would not serve more jail time at sentence because the court did not have sufficient facts to make that determination without reading the probation report. The court's promise was limited to not imposing a state prison term. The court advised Wright to again discuss the matter with counsel, keeping in mind the court's representations. After a further off the record discussion between defense counsel and Wright, defense counsel informed the court that Wright was "prepared to risk the situation and proceed with the plea."

In response to the court's inquiries, Wright indicated he understood the court would not initially impose any state prison term but if Wright violated the terms and conditions of his probation he could be sent to state prison. Wright also indicated that he understood everything that had been said in court and he had adequate time to discuss the case with his counsel. Norman then stated the factual basis for the plea. On July 5, 2012, Wright had been drinking and had an argument with the mother of his children. He

3

"ended up hitting her multiple times causing cuts to her face, she had bruising on her arm, and she had a bite mark on her arm and hand." Norman reiterated that she was asking that the conviction remain a felony because at the time of this offense Wright was on probation for a prior misdemeanor for resisting, delaying or obstructing an arrest (§ 148). The court then repeated, "I want to be clear. What you have been promised is no state prison at the outset in this case. Is that your understanding?" Wright replied, "Yes." The court accepted Wright's plea of no contest after finding a knowing, intelligent waiver of his constitutional rights, that the plea was freely and voluntarily entered with an understanding of the consequences, and there was a factual basis for the plea. The court advised Wright that while he was in custody, a probation department officer would talk to him and then prepare a report, which "can have a substantial impact on what your ultimate sentence turns out to be. [¶] Do you understand?" Wright replied, "Yes."

C.     **Sentencing Proceeding**

At the August 17, 2012, sentencing proceeding, defense counsel began his remarks by noting the probation report "came in considerably different [from] what [Wright] was hoping for in terms of custody time."[3] Defense counsel stated that Wright was still hoping to be released that day, but counsel did not feel prepared to proceed because of the receipt of the probation report just four days earlier and he had been unable to speak with Wright. Deputy District Attorney Joshua Rosenfeld stated the People were prepared to submit on the probation report. The court was willing to grant an adjournment, but Wright wanted to be sentenced that day.

---

[3]     The probation department officer submitted a report setting forth her reasons for recommending that the court impose a probationary term of 36 months, with a condition that Wright be sentenced to county jail for 360 days with credit for time actually served of 44 days (plus 44 days of section 4019 conduct credit). The recommendation was based on numerous factors including Wright's pattern of domestic violence that "goes back many years," his lack of "accountability" and "blaming the victim" in the current offense, his prior criminal history (12 misdemeanor convictions, including two prior domestic battery convictions), and his unsatisfactory performance on previous orders of formal and summary probation.

4

The court then stated: "So, there was an agreement in this case of no state prison at the outset. No specific agreement as to how much time Mr. Wright might do. [¶] I have now read and considered the probation report and . . . [a] couple of things emerged from that. One is that the victim in this case is [adamant] about no further contact with Mr. Wright. And the Probation Department was not impressed with the level of responsibility that Mr. Wright took for his conduct. And so the recommendation is that he be placed on probation . . . but that he also [serve] a year in the county jail."

Defense counsel asked the court to consider that Wright had a very serious alcohol problem, and that when he drank he got angry and could be physically violent, but he was "trying to make things better for himself. [¶]. . . [A]t the time of his plea, which I was a little concerned about because I felt he was pleading at least in part based on some expectations that were not justified and, of course, today it shows that they weren't[.] . . . [S]everal times it was brought up to the Court and everybody that he would enter this felony plea and that he hoped to be released at the time of sentencing so that he could start his semester in school. And that hope was, I think, the sentencing was actually set a little early for today so that he possibly could be released in time to start school on Monday. [¶] Now with all that said, I know that there was no promise of that other than the no state prison promise. But it seems to me that . . . there are more positive things that we could do with Mr. Wright . . . in the interim than keep him in county jail for a year. . . . I would suggest that the Court consider giving him credit for time served, ordering him to come back in a few weeks with proof that he's enrolled in school, proof that he's enrolled in [a] 52-week [domestic violence batterer's] program, and give him a chance to do those things so that . . . the Court knows that he is actually genuine about doing the things that can change his life." Tim King, the probation officer representing the department, argued that the deputy probation officer who had prepared the report, "felt that because [Wright's] lack of remorse and based on his criminal record that 365 [sic] days, based on the circumstances of the crime, were warranted. So I'm going to submit on that. " Deputy District Attorney Rosenfeld stated, "I would like to highlight

5

for the Court that there is a significant history of domestic violence and with that I will submit."

The court followed its "promise of no state prison at the outset." It imposed a probationary term of 36 months, with a condition that Wright served 240 days in county jail with credit for 44 days of actual time served in custody. After Wright served 90 days of actual custody, the court would consider a defense request that the remainder of the custody time be served in a probation-approved alcohol program for at least six months, and if the program was a residential treatment program, the court would consider "day-for-day credit against the sentence." The court acknowledged that Wright would have probably been released that day if he had spoken differently to the probation officer, and the court was convinced the current offense was unlikely to happen again. However, the court was worried about Wright's "mindset," and that his history made it likely a similar offense would happen again, somebody could be hurt or killed, and Wright would spend the rest of his life in custody. The court hoped Wright would consider attending a residential alcohol treatment program but the court in good conscience could not release him that day.

**DISCUSSION**

Wright concedes that at the change of plea proceeding Deputy District Attorney Norman made no explicit promises that at sentencing Wright would be released from custody and serve no additional jail time. He further concedes that Norman made no explicit promises that at sentencing the prosecution would either advocate or not oppose Wright's release from custody and that he serve no additional jail time. Instead, Wright's sole contention is that Norman impliedly made such promises by her statements that "hopefully" Wright would be released from custody at sentence and he would "probably" not serve additional jail time. He argues that Norman's "representations created an expectation on [his] part that, if he gave up his right to trial and the attendant constitutional protections, he would gain the benefit of being released from custody before his college classes began, unless some new negative information turned up in the probation report, even though there was no express promise to that effect." Based on the

6

premise that Norman made implied promises, Wright then argues the prosecution violated "the inducement for the plea" when Deputy District Attorney Rosenfeld advocated at sentencing that the court follow the probation department's recommendation that Wright serve additional jail time as a condition of probation.

However, Wright's contentions are not supported by the record. The only reasonable interpretation of the discussions at the change of plea proceeding is that Wright was explicitly informed that he might not be released on the day of sentence as "he may be doing more jail time," and the prosecution could not and would not make a recommendation as to an appropriate jail term until after a review of the probation report. As acknowledged by defense counsel, Wright was "prepared to risk the situation" (that the only promise was that there would be no imposition of a state prison term), "and proceed with the plea." Accordingly, we reject Wright's request for an opportunity to withdrew his plea as he has not shown the prosecution induced him to change his plea by implied promises that were later violated at sentencing. [4]

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

---

[4] _People v. Collins_ (2001) 26 Cal.4th 297, and _Brown v. Poole_ (9th Cir. 2003) 337 F.3d 1155, are factually distinguishable from this case, and do not support Wright's request for appellate relief.

In light of our determination, we need not address the parties' other contentions.