WARDLAW, Circuit Judge,
with whom SILVERMAN, Circuit Judge, joins, concurring in the denial of rehearing en banc:
The panel majority opinion speaks for itself. I respectfully suggest that there is no need for the dissent’s “the sky is falling” rhetoric. This is the rare case where the state court’s decision was contrary to then-clearly established Supreme Court law governing guilty pleas induced by agreements with the prosecutor. It is no wonder that a majority of our active judges declined to rehear this simple appeal en banc.
I.
On October 18, 2005, the San Diego County District Attorney’s Office filed a criminal complaint against Cuero. The complaint, as amended, charged Cuero with two felonies, causing great bodily injury to another while driving under the influenee and being a felon in possession of a firearm, as well as with a misdemeanor charge of being under the influence of a controlled substance. The state alleged, based on its review of Cuero’s criminal history, that Cuero had a single strike for first-degree burglary and three additional prior convictions resulting in prison terms that did not constitute strikes.
Cuero and the prosecution reached a plea agreement, which they reduced to writing. Cuero would plead guilty to the two substantive felony counts listed in the first amended complaint and admit, his four prior convictions. In exchange, the state would drop the misdemeanor charge from the complaint. This agreement represented a charge bargain only, not a sentence bargain.[1] As indicated on the plea agreement, the parties did not agree to a particular sentence, leaving sentencing to the court within the maximum statutory sentence of 14 years, 4 months of incarceration.
On December 8, 2005, Cuero pleaded guilty pursuant to the terms of the plea deal. During the change-of-plea proceeding, the court reviewed the plea agreement, signed by both defense counsel and the state prosecutor, and noted that the parties had left the “sentence for the Court” and that Cuero had made no sentencing deals “with the People.” The court confirmed that Cuero had heard “the plea agreement that [the court] described,” that it was his “full and complete understanding of the agreement to settle this case” and that he “wish[ed] to accept the agree *1021 ment to this case.” The judge also explained that “[i]n addition to the plea agreement,” the document set forth the constitutional rights Cuero relinquished by pleading guilty.
Cuero fully performed his obligations under the plea bargain, pleading guilty and waiving his constitutional and other rights. The government then moved to dismiss the misdemeanor count “in light of the plea,” carrying out its own obligation under the agreement. Once Cuero pleaded guilty to the relevant charges and the prosecution moved to drop the misdemean- or charge, the trial judge signed the court’s “Finding and Order” accepting Cuero’s plea and admissions and concluding that Cuero was “convicted thereby.” The court scheduled sentencing for January 11, 2006.
While preparing for sentencing, the prosecution apparently concluded that another of Cuero’s prior convictions constituted a strike. Though the prosecutor was previously aware of this conviction (as evidenced by the fact she charged it in the complaint to which Cuero had pleaded guilty pursuant to the plea deal), she did not initially notice that the prior conviction could be counted as a strike. Notwithstanding the written agreement “to settle this case” and Cuero’s preexisting guilty plea and conviction, the prosecution moved to amend the complaint to add a second strike and two additional felony priors, drastically increasing Cuero’s sentencing exposure from a maximum of 14 years, 4 months to a minimum of 25 years and a maximum of 64 years to life. A different Superior Court judge than the one who accepted the plea agreement and signed the conviction papers permitted, over defense counsel’s objection, the prosecutor to “amend” the charging document. Cuero, deprived of the benefit of his original bargain and having no other choice, entered into a new plea agreement exposing him to a maximum sentence of 25 years to life. On April 20, 2006, the new trial judge sentenced Cuero to 25 years to life.
II.
Under the Antiterrorism and Effective Death Penalty Act (“AEDPA”), a habeas petition may not be granted unless the state court’s adjudication of the claim under review “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law” or “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d). “[Cjlearly established Federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.” Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (internal quotation marks omitted). At the' time of the state court’s decision, Supreme Court precedent clearly established that it was a violation of Michael Cuero’s due process rights for the prosecution to seek to amend its complaint after Cuero entered a guilty plea induced by a plea agreement with the State. The trial judge’s decision to allow the prosecution to amend the complaint after Cuero pleaded guilty and was convicted pursuant to the agreement thus violated clearly established Supreme Court law, satisfying AEDPA’s requirements.
First, Santobello v. New York holds that “when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); see also Bordenkircher v. Hayes, 434 U.S. 357, 362, 98 S.Ct. 663, 54 L.Ed.2d 604 *1022 (1978) (“[A] prosecutor’s plea-bargaining promise must be kept”). Santobello stands for the proposition that “a criminal defendant has a due process right to enforce the terms of his plea agreement.” Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc).[2]
Second, the Court in Mabry v. Johnson instructed us that a guilty plea entered pursuant to a plea agreement “implicates the Constitution.” 467 U.S. 504, 507-08, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (“A plea bargain standing alone is without constitutional significance.... It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent’s liberty at issue here.”); see also Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) (“A plea of guilty .... is itself a conviction. Like a verdict of a jury it is conclusive... [T]he court has nothing to do but give judgment and sentence.”). My dissenting colleagues incorrectly claim that Mabry did' not determine the point at which a defendant’s due process right to enforce his plea agreement attaches. Yet the central issue in Mabry was whether due process concerns are implicated when a defendant accepts the prosecution’s offer of a plea deal or only when the defendant pleads guilty in detrimental reliance on the plea agreement. See Mabry, 467 U.S. at 507-10, 104 S.Ct. 2543. The core holding of Mabry is thus that a plea of guilty induced by a plea agreement triggers due process protection.
Together, these Supreme Court cases clearly establish that a defendant whose guilty plea was induced by a prosecutorial promise is constitutionally entitled to fulfillment of that promise and that a subsequent prosecutorial breach of the plea agreement violates the defendant’s due process rights. Once Cuero fully performed his promise to plead guilty and the government moved to dismiss his misdemeanor charge, Cuero stood “convicted” pursuant to a “Finding and Order” signed by the judge. According to Mabry, at that point Cuero’s plea agreement transformed from an “executory agreement” that did not “implieate[] the Constitution” to one that bore' “constitutional significance” because Cuero’s guilty plea and conviction were induced by the prosecutor’s agreement to'the reduced charges. 467 U.S. at 507-08, 104 S.Ct. 2543. Cuero’s plea rested on a promise of the prosecutor, requiring that promise to be “fulfilled.” Santobello, 404 U.S. at 262, 92 S.Ct. 495. The plea bargain became a constitutionally enforceable agreement, and Cuero was entitled to have the prosecution carry out its end of the deal.
There is absolutely no support for the dissent’s supposition that whether the Due Process Clause is implicated turns on whether the defendant has been sentenced and final judgment rendered. In fact, the Supreme Court has held distinctly contrary to the dissent’s view. In Santobello, the Supreme Court addressed the Due Process Clause’s application to circumstances strikingly similar to Cuero’s. At the point when the prosecution breached Santobello’s plea agreement, a judgment setting forth the sentence had not been entered. The prosecution had promised in the pre-judgment plea agreement that it would not make a sentencing recommendation, and Santobello pleaded guilty in ac *1023 cordance with that agreement. 404 U.S. at 258-59, 92 S.Ct. 495. At sentencing, the government broke its promise by urging the court to adopt the maximum available sentence, one year. Id. at 259, 92 S.Ct. 495. The Supreme Court held that Santobello had a due process right to enforce the terms of his plea agreement, finding that the prosecutor breached the agreement and that “the adjudicative element inherent in accepting a plea of guilty” must contain safeguards to protect the rights of defendants, including the right to have a prosecutorial promise fulfilled when such promise was used to induce a guilty plea. Id. at 262, 92 S.Ct. 495 (emphasis added).
Defendants routinely promise pursuant to plea agreements both to plead guilty and to cooperate by testifying at a code-fendant’s trial. The defendant enters his plea, the plea is accepted by the court, but he is not sentenced until after he fully cooperates, and therefore a final judgment is not immediately entered. According to the dissent’s analysis, because the defendant has not been convicted and final judgment has not been entered, an amendment of the charging document at that point would be constitutionally permissible. Yet it would be a clear violation of a defendant’s due process rights to allow the prosecution to breach the agreement by seeking to amend the complaint or indictment at that stage, once the defendant had already fully performed his end of the bargain by testifying against his codefendant. It therefore cannot be the case that due process rights do not attach until the defendant has already been sentenced and “final judgment” entered. The dissent’s discussion of the distinction between a guilty plea and the entry of judgment (which carefully omits the fact of conviction following entry of a plea) is thus a distinction without a difference to our analysis.
Similarly, the dissent’s argument that the original plea agreement “was not in effect at the time judgment was entered” and therefore lacks constitutional significance begs the question. The original plea deal was “in effect” when Cuero first pleaded guilty and was convicted pursuant to his plea. To the extent the agreement ceased to be “in effect,” this was solely because in the interim the government was allowed to breach the agreement, leaving Cuero no choice but to plead a second time to a different complaint and be convicted once more. The dissent’s argument reduces to the proposition that because the government breached the first plea agreement, Cuero’s guilty plea and resulting conviction induced by that plea agreement did not implicate due process, creating a catch-22 for Cuero and like defendants. According to my dissenting colleagues, the due process right to enforce a plea agreement would apply only where the prosecutor had not previously breached it.
III.
The dissent similarly holds an alternative view of state law untethered to reality. California state law treats guilty pleas entered without the inducement of a plea agreement with the State differently from those that are entered pursuant to a plea deal. Under California law, the rights of both parties to back out of the plea agreement terminated once Cuero entered his plea pursuant to the parties’ agreement and was convicted. Cuero did not simply enter a plea that he could withdraw. The trial court “made the requisite factual findings and accepted the plea,” Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003), and concluded that Cuero was “convicted thereby.” Once the plea was accepted and Cuero was convicted, he could no longer withdraw his guilty plea absent good cause and an exercise of discretion by the court. *1024 Cal. Penal Code § 1018. Similarly, California Penal Code § 969.5, while allowing the prosecution to amend a complaint after the entry of guilty pleas without plea agreements, does not allow the prosecution to amend its complaint following a guilty plea that was induced by prosecutorial promises embedded in a plea agreement. Instead, under California law, “a prosecutor may withdraw from a plea bargain at any time before the defendant pleads guilty or otherwise detrimentally relies on that bargain.” 3 B.E. Witkin et al., California Criminal Law § 382 (4th ed. 2012) (emphasis added); see also People v. Superior Court (Alvarado), 207 Cal.App.3d 464, 255 Cal.Rptr. 46, 50-51 (1989). California law does not permit amendment to the complaint when the guilty plea is entered in reliance on a plea agreement precisely because such an interpretation would run afoul of the due process protections that attach under those circumstances. The dissent is therefore wrong as a matter of state as well as constitutional law.
IV.
The dissent further misstates California law providing'the requisite remedy for the prosecution’s breach. As the dissent acknowledges, the Supreme Court has clearly established that “the construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.” Ricketts v. Adamson, 483 U.S. 1, 5 n.3, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). Moreover, both Supreme Court and California precedent provide that plea agreements are to be interpreted in accordance with state contract law. See Puckett v. United States, 556 U.S. 129, 137, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (“[P]lea bargains are essentially contracts.”); People v. Segura, 44 Cal.4th 921, 80 Cal.Rptr.3d 715, 188 P.3d 649, 656 (2008) (“A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.” (quoting People v. Ames, 213 Cal.App.3d 1214, 261 Cal.Rptr. 911, 913 (1989))). “A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles.” People v. Shelton, 37 Cal.4th 759, 37 Cal.Rptr.3d 354, 125 P.3d 290, 294 (2006).
By seeking to amend the complaint after Cuero waived all his rights, pleaded guilty and was convicted, the prosecution breached the fundamental promise it made to Cuero: The State agreed to drop a charge and thereby limit Cuero’s maximum exposure to 14 years, 4 months incarceration. The foundation of a charge bargain is that the parties reach an agreement as to what the prosecution will and will not charge and to what the defendant will plead. See LaFave, supra, at § 21.1(a). By definition, a charge bargain means that the prosecution will not later add charges or strikes, just as the defendant will not plead to less than the agreed-upon charges and strikes. The government’s attempt to amend the complaint unequivocally breached its central promise to Cuero.[3]
*1025 “Where a plea agreement is breached, the purpose of the remedy is, to the extent possible, to repair the harm caused by the breach.” Buckley, 441 F.3d at 699 (internal quotation marks omitted) (quoting People v. Toscano, 124 Cal.App.4th 340, 20 Cal.Rptr.3d 923, 927 (2004) (citing People v. Kaanehe, 19 Cal.3d 1, 136 Cal.Rptr. 409, 559 P.2d 1028, 1036-37 (1977))). California law calls for specific performance “when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition that he or she considers unsuitable under all the circumstances.” People v. Mancheno, 32 Cal.3d 855, 187 Cal.Rptr. 441, 654 P.2d 211, 215 (1982). “When the breach [alleged] is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain and will be granted where there is a substantial possibility that specific performance will completely repair the harm caused by the prosecutor’s breach.” People v. Timothy N. (In re Timothy N.), 216 Cal.App.4th 725, 157 Cal.Rptr.3d 78, 88 (2013) (alteration in original) (internal quotation marks omitted) (quoting Kaanehe, 136 Cal.Rptr. 409, 559 P.2d at 1036).
Here, the sole remedy available to implement Cuero’s reasonable expectations was specific performance. “Permitting” Cuero to withdraw his guilty plea and plead guilty to the constitutionally defective amended complaint, the alternative remedy proposed, did not repair the harm caused by the breach; instead, it allowed the prosecution to achieve the precise outcome it sought in breaching the plea agreement. Protection of Cuero’s due process rights therefore “leaves specific performance as the only viable remedy.” Brown, 337 F.3d at 1161.
V.
Finally, the panel majority opinion has none of the broader implications my dissenting colleagues would ascribe to it. The opinion does not alter the existing dynamic between the prosecutor and the defendant. Prosecutors are already constitutionally required to uphold their end of plea agreements following the entry of a guilty plea and conviction, see Santobello, 404 U.S. at 262, 92 S.Ct. 495—a proposition that no one can fairly find surprising. Neither party to a binding plea agreement is permitted to renege on that agreement because he may have entered it on the wrong assumptions. If the prosecution is troubled by its inability to breach a binding plea agreement if further information about a defendant’s criminal history comes to light, contractual provisions can and do minimize that risk. Here, for example, the original plea agreement could have provided that if the state later learned that one of the charged priors qualified as a strike, the court could treat it as such for sentencing purposes. And contrary to my dissenting colleagues’ contention, the panel majority opinion does not apply where the defendant misrepresents his identity or prior convictions and thereby fraudulently induces the . government to enter a plea agreement that does not reflect his full criminal history. In this case, the govern *1026 ment had access to accurate and adequate information about Cuero’s prior convictions at the time of the original plea agreement and merely neglected to reflect his full criminal history in the original amended'complaint.
It is only by abstracting to the highest level — noting that “plea agreements play an instrumental part in our criminal justice system” — that my dissenting colleagues can claim that this case impedes the administration of criminal justice in California. No one disputes that plea agreements are an “essential component of the administration of justice.” Santobello, 404 U.S. at 260, 92 S.Ct. 495. Yet the majority opinion in no way interferes with the ability of the state to conduct plea negotiations and enter plea agreements. Indeed, it is the dissent’s interpretation of the Due Process Clause and California Penal . Code § 969.5 — as enabling the prosecution to back out of charge bargains already accepted by the court and fully performed by the defendant — that would undermine the stability of the plea bargaining system by rendering such bargains illusory and untrustworthy. If a prosecutor could unilaterally renege on a plea bargain that had been accepted by the court and fully performed by a defendant, defendants would likely lose faith in the plea bargaining system and would rationally require more substantial promises from the prosecution to secure their participation.

. Charge bargains "consist[] of an arrangement whereby the defendant and prosecutor agree that the defendant should be permitted to plead guilty to a charge less serious than is supported by the evidence.” 5 Wayne R. La-Fave et al., Criminal Procedure § 21.1(a) (4th ed. 2016). Sentence bargains "involve[] an agreement whereby the defendant pleads ... to the original chargef ] in exchange for some kind of promise from the prosecutor concerning the sentence to be imposed.” Id. In short, in a charge bargain the deal relates to the charges the prosecution will bring and to which the defendant will plead, while in a sentence bargain the parties reach an agreement over the prosecution’s sentencing recommendation. This distinction is also reflected in Federal Rule of Criminal Procedure 11.

. This language from Buckley and other citations to circuit precedent in the panel majority opinion guided our analysis only "for the limited purpose of assessing what constitutes ‘clearly established’ Supreme Court law and whether the state court applied that law unreasonably.” Woods v. Sinclair, 764 F.3d 1109, 1121 (9th Cir. 2014).

. The dissent also argues that the state prosecutor made a mistake in the original plea agreement, which could entitle the prosecution to rescission. First, the state has never raised the issue of rescission based on mistake in the many years of briefing in this case, so the argument is waived. Second, there is no evidence that the state prosecutor’s original promises under the first plea agreement arose from a "mistake.” It is equally likely that the prosecution forewent additional legal research and investigation in order to secure a quick, favorable resolution of this case. Third, the government's putative "mistake” regarding whether Cuero’s prior conviction constituted a strike under California law would have been a mistake of law, not a mistake of fact, and California law does not permit rescission of a contract based on a party's unilateral mistaken interpretation or application *1025 of the law. See Cal. Civ. Code §§ 1578, 1689(b)(1). Finally, even if the standard permitting rescission for certain unilateral mistakes of fact applied here, rescission is not available to a party whose mistake of fact was the result of its own negligence, see Cal. Civ. Code § 1577, as was the government's late "discovery” of Cuero's strike here: The government had access to all the information necessary to conclude that Cuero’s second prior conviction constituted a strike, and its failure to do so before entering the plea agreement was exclusively the result of its own negligence at best or a calculated, though incorrect, decision at worst.