Miguel OROZCO, aka Michael Ochoa, aka Domingo Ramos, Petitioner

v.

Ken CLARK, Respondent.

Case No. CV 07–7746–JHN(RC).

United States District Court, C.D. California.

April 5, 2010.

Miguel Orozco, Corcoran, CA, pro se.

Linnea Daya Piazza, Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

JACQUELINE H. NGUYEN, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommenda-

tion is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Jacqueline H. Nguyen, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

1. The facts and circumstances underlying petitioner's conviction are set forth in the probation officer's report for the sentencing hearing, as follows:

On [or about September 12, 1981,] the [petitioner] and victims, William Bates and Josie Martinez, were at the High Hat Bar in Los Angeles. Apparently the [petitioner] and Bates became involved in some type of argument. The [petitioner] was heard by witnesses to make some comments to the effect that he was going go damage Bates' motorcycle. Bates apparently slapped or punched the [petitioner] and the [petitioner] left. Sometime later Bates and Martinez left the bar on a motorcycle. Sometime later witnesses observe the motorcycle ridden by Bates and Martinez to be stopped at the corner of York and Aldama Street. The motorcycle was in the left turn lane. A pickup truck driven by the [petitioner] was observed to deliberately smash into the back of the motorcycle. Martinez was thrown from the motorcycle and Bates was thrown up on to the hood of the pickup truck. The [petitioner] continued driving his pickup truck with the motorcycle im-

## BACKGROUND

### I

On June 4, 1982, in Los Angeles County Superior Court case no. A371696, petitioner Miguel Orozco, aka Michael Ochoa, aka Domingo Ramos, pleaded nolo contendere to, and was convicted of, second degree murder in violation of California Penal Code § 187(a), and on September 9, 1982, petitioner was sentenced to 15 years to life in state prison.[1] Lodgment nos. 1 & 2; Petition, Exhs. D–F.

On February 16, 2006, the California Board of Parole Hearings ("Board") held a parole suitability hearing for petitioner, and determined petitioner was not suitable for parole for two years.[2] Lodgment no. 4. The petitioner then filed petitions for habeas corpus relief in the Superior Court, the California Court of Appeal and the California Supreme Court, and these peti-

paled on the grill. Witnesses followed [petitioner's] pickup for some distance. The motorcycle remained on the grill of the truck and Bates remained on the hood. The [petitioner] then stopped the truck, abandoned it and fled. He was followed by witnesses and taken into custody. Victim Martinez died at the scene and victim Bates was seriously injured. The [petitioner] displayed the symptoms of intoxication and failed to perform a field sobriety test. A subsequent chemical test was administered and a blood alcohol reading of .11% was recorded. The [petitioner] was subsequently arrested for vehicular manslaughter. However, later investigation revealed that the [petitioner] had deliberately run into the back of the motorcycle and the [petitioner] was ultimately charged with murder and attempted murder.

Lodgment no. 2 at 4–5.

2. Subsequently, on January 26, 2009, the Board determined petitioner was suitable for parole. Lodgment no. 14. However, Governor Schwarzenegger reversed the Board's decision on June 25, 2009. Lodgment A.

**1164**

tions were denied.[3] *See* Lodgment nos. 5–10. Thus, petitioner has exhausted his state court remedies regarding the Board's 2006 decision to deny him parole, as respondent acknowledges. *See* Answer ¶ 10.

## II

The Board, in denying petitioner parole in 2006, gave the following reasons:

The panel has reviewed the information received from the public and relied on the following circumstances in concluding that the inmate is not yet suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. [1] As it regards the commitment offense, multiple victims were involved in this crime, one was killed and that was Josie Martinez who was the girlfriend of William Bates who was the second victim. Mr. Bates and Mr. Orozco had gotten into an argument earlier in the evening of September 12th, 1981 and this was at the High Hat Bar in Los Angeles. A pool game was going on, a fight broke out and Mr. Orozco was very angry at Mr. Bates for this fight and argument. He left the bar, he was intoxicated at the time and decided to wait in his vehicle for Mr. Bates to leave the bar and then pursue him. The motive for this crime was very trivial in relation to the offense in that it was an argument. The manner in which Ms. Martinez was killed and Mr. Bates was injured was they were driving on a motorcycle, when they left the bar they got on the motorcycle and proceeded to leave and at that point in time Mr. Orozco was in his pick up truck and pursued the motorcycle, hit the motorcycle, the motorcycle was actually impaled on the truck grill and unfortunately Ms. Martinez suffered fatal injuries and Mr. Bates did however survive the attack. [2] And in terms of a previous criminal record, we note approximately 12 arrests, most of the dispositions are unknown and the arrests include receiving stolen property, grand theft auto, misdemeanor drunk driving on a highway, and there was also a[n] arrest for burglary. And so this does demonstrate an escalating pattern of criminal conduct and violence and the inmate did fail to profit from previous attempts to correct his criminality such as probation and county jail. [3] The inmate does have a history of alcohol abuse. And in terms of institutional behavior, early on the inmate was definitely off to a bad start. However, he did reform and debrief from a prison gang and has been disciplinary free since 1989.... [Y]ou're here a lot longer than you would have been had you come in and not joined that gang and committed other offenses.

3. On April 10, 2007, the California Court of Appeal gave the following reasons for denying petitioner's habeas corpus petition:

Petitioner pled no contest to second degree murder and was sentenced to 15 years to life on September 9, 1982. The record does not show that petitioner's plea agreement has been violated merely because he has served longer than 15 years. (See generally, *In re Dannenberg* (2005) 34 Cal.4th 1061, 1078, 1097–1098, 23 Cal.Rptr.3d 417, 104 P.3d 783 [a person sentenced to an indeterminate life sentence may serve up to life in prison, although they become eligible for parole consideration after serving minimum terms of confinement].) [¶] There is "some evidence" to support the Board of Prison Term's denial of parole. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 652, 658, 128 Cal. Rptr.2d 104, 59 P.3d 174). There were multiple victims. Also, there was evidence that from mid–2003 until the date of his parole hearing in February 2006, petitioner failed to attend self help programs. [¶] Finally, our California Supreme Court has rejected petitioner's argument that there is a "no-parole" policy. (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 685, 128 Cal.Rptr.2d 104, 59 P.3d 174.)

Lodgment no. 8.

We feel that you have not yet sufficiently participated in beneficial self help programs, mainly some type of a 12 step program to insure your ongoing recovering abstinence from alcohol use. [4] And in terms of parole plans, we do have the counselor's notation from interviews with the inmate. That he has set up [a] residential plan for himself with relatives, with his brother or his mother and we also have notes that he has been offered a job at Sierra Auto Body and Paint. But we would note Sir that it's a very good thing that your counselor did document this, however we do need to see something on paper from these individuals in terms of documentation for your parole plans because as this process moves forward, you know once you do get a date it goes through several other channels and people need to see documentation as we do that these plans are firm. Okay, and we note that in response to 3042 notices, the District Attorney of Los Angeles County has expressed opposition to a finding of parole suitability. [5] And we also find that the inmate continues to need self help in order to face, discuss, understand, and cope with stress and conflict in a non[-]destructive manner and until progress is made the inmate continues to be unpredictable and a threat to others. We would however like to commend you again for being disciplinary free since 1989 and for going through that debriefing process which must have been a painful decision to make as well as your participating in the auto paint and the work assignment that you currently have. In a separate decision the hearing panel finds that the inmate has been convicted of murder and it is not reasonable to expect that parole be granted at a hearing during the next two years. [6] We note that for many, many years you have been getting one year denials but it seems like in the last two years you know you've had some recommendations made and not fulfilled them so we are giving you the extra time to fulfill these and hopefully at your next parole hearing you will come in completely prepared and hopefully the panel will recognize that and take the [sic] what ever action they choose. The inmate, the reasons for this, the commitment offense, the multiple victims were involved in this accident, one was killed and that was Ms. Josie Martinez, Mr. William Bates was injured and this was a horrific crime actually that those two victim's [sic] were on a motorcycle while leaving the area of the High Hat Bar. The inmate who was angered over a previous altercation pursued them in his car, struck the motorcycle, the motorcycle was impaled on the grill of the truck. Ms. Martinez unfortunately suffered extensive injuries and did die and Mr. Bates was injured. This motive was very trivial in that it was over a previous argument. The inmate does have numerous arrests as well as a history of alcoholism. The inmate does need additional time to complete his second vocation, to get some more self help programming so that we can be assured that your drinking issues with alcohol are completely behind you and that you can articulate to the panel why you will no longer ever be tempted or ever [will] drink alcohol again. There for [sic] a longer period of observation and evaluation is required before the board should find the inmate suitable for parole. We recommend that you remain disciplinary free, if available upgrade vocationally and also if available participate in self help programming.

Lodgment no. 4 at 59–64.

### III

On November 29, 2007, petitioner filed the pending habeas corpus petition under

28 U.S.C. § 2554 challenging the Board's 2006 decision to deny him parole, raising the following grounds:

Ground One—"Petitioner has been subjected to an ex post facto violation of his reasonable understanding of his plea agreement with the state of California, in violation of due process protection by the 14th Amendment of the U.S. and California Constitutions";

Ground Two—"Petitioner's plea has been violated by virtue of the fact that the direct consequences of his plea were changed to First Degree Murder rendering the plea invalid, unknown, unintelligent, involuntary and the product of coersion [sic] by ineffective assistance of counsel in violation of due process protection by the 14th Amendment of the U.S. and California Constitutions";

Ground Three—"The Board is violating Penal Code statutes and its own rules in making numerous suitability decisions in the instant matter when it disregards relevant, reliable and available information which it is required to utilize in the decision[-]making process, which is prejudicial to Petitioner's [sic] and a violation of Petitioner's guaranteed due process right and the 14th Amendment to [sic] liberty interest";

Ground Four—"The Board ... is enforcing a 'No–Parole' policy"; and

Ground Five—"The Parole Board violated Petitioner's right to due process when facts of the crime that were not proven/found by a jury or admitted by Petitioner were used to aggravate Petitioner's crime in violation of the 6th Amendment and ex post facto clauses of the due process clause of the 14th Amendment and the due process clause of the U.S. and California Constitutions."

Petition at 4–6b.[4]

On February 1, 2008, respondent filed his answer, and on March 31, 2008, petitioner filed his reply. On June 10, 2009, respondent filed a supplemental answer, advising the Court petitioner was found suitable for parole on January 26, 2009, and on July 21, 2009, petitioner filed a supplemental reply. On July 29, 2009, respondent filed a response to petitioner's supplemental reply.

## DISCUSSION

### IV

 "Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan,* 484 U.S. 193, 199, 108 S.Ct. 523, 528, 98 L.Ed.2d 529 (1988); *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974) (per curiam). "[F]ederal courts may not 'give opinions upon moot questions or abstract propositions.'" *Calderon v. Moore,* 518 U.S. 149, 150, 116 S.Ct. 2066, 2067, 135 L.Ed.2d 453 (1996) (per curiam) (quoting *Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895)). "This means that, throughout the litigation, the [petitioner] 'must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990)); *see also. Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (per curiam) ("In general, a case becomes moot when the issues presented are no longer live or

4. Petitioner has included several unnumbered pages between pages 4 and 7 of his habeas corpus petition. The Court refers to these pages as pages 5a, 6a and 6b.

the parties lack a legally cognizable interest in the outcome." (citations and internal quotation marks omitted)). The burden of demonstrating mootness is a heavy one. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *West v. Secretary of the Dep't of Transp.,* 206 F.3d 920, 924–25 (9th Cir. 2000).

█ On January 26, 2009, subsequent to the hearing petitioner complains about, the Board determined petitioner was suitable for parole. Lodgment no. 14. Based on this 2009 decision, respondent contends petitioner's pending habeas corpus petition is moot, even though Governor Schwarzenegger reversed the Board's 2009 decision on June 25, 2009. Lodgment A. The Court disagrees. "Because petitioner is still in custody as a result of the [2006] decision he challenges in this petition, subsequent proceedings do not render his petition moot." *Worline v. Salazar,* 2009 WL 3332926, *1 (C.D.Cal.); *see also Ellis v. Campbell,* 2007 WL 2009802, *2 (E.D.Cal.) ("A subsequent parole hearing does not moot a challenge to an earlier parole decision."), *adopted* by, 2007 WL 2265061 (E.D.Cal.); *Hodge v. Carey,* 2007 WL 163247, *3 (E.D.Cal.) (a federal habeas action is not mooted by a subsequent hearing because the subsequent hearing does not necessarily cure defects that occurred at the prior hearing), *adopted by,* 2007 WL 1975486 (E.D.Cal.). Accordingly, respondent has not met his heavy burden of demonstrating the pending petition is moot, and his motion to dismiss is denied.

### V

█ In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *see also Dugger v. Adams,* 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). Therefore, to the extent petitioner contends the Board's decision violated the California Constitution or other state laws, his claims are not cognizable in this proceeding. *See,* e.g., *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984) ("A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law.").

### VI

█ The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual is-

sues is correct, and petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■■■ The California Supreme Court reached the merits of petitioner's claim when it denied his habeas corpus petition without comment or citation to authority. *Gaston v. Palmer,* 417 F.3d 1030, 1038 (9th Cir.2005), *amended* by, 447 F.3d 1165 (9th Cir.2006), *cert. denied,* 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro,* 982 F.2d 344, 348 (9th Cir. 1992), *cert. denied,* 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels,* 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied,* 552 U.S. 1316, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, in addressing petitioner's due process claims, this Court will consider the reasoning of the California Court of Appeal, which denied these claims on the merits. *Smith v. Curry,* 580 F.3d 1071, 1079 (9th Cir.2009). However, Grounds One and Five also raise ex post facto claims that have not been addressed by any reasoned state court decision, and this Court must conduct "an independent review of the record" to address those claims and "to determine whether the state court clearly erred in its application of controlling federal law." *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000); *Musladin v. Lamarque,* 555 F.3d 830, 835 (9th Cir.2009).

## VII

■■■ "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

*Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984); *Davis v. Woodford,* 446 F.3d 957, 961 (9th Cir.2006). The State's breach of a plea agreement implicates the constitutional guarantee of due process. *Johnson,* 467 U.S. at 509, 104 S.Ct. at 2547; *Brown v. Poole,* 337 F.3d 1155, 1159 (9th Cir.2003).

■■■ "Plea agreements are contractual in nature and measured by contract law standards." *In re Ellis,* 356 F.3d 1198, 1207 (9th Cir.2004) (en banc); *Buckley v. Terhune,* 441 F.3d 688, 695 (9th Cir.2006) (en banc), *cert. denied,* 550 U.S. 913, 127 S.Ct. 2094, 167 L.Ed.2d 831 (2007); *Brown,* 337 F.3d at 1159. Under "clearly established federal law[,] ... the construction and interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.'" *Buckley,* 441 F.3d at 694–95 (quoting *Ricketts v. Adamson,* 483 U.S. 1, 6 n. 3, 107 S.Ct. 2680, 2684 n. 3, 97 L.Ed.2d 1 (1987)). "Under California law, a contract must be interpreted so as 'to give effect to the mutual intention of the parties as it existed at the time of contracting.'" *Davis,* 446 F.3d at 962 (quoting Cal. Civ.Code § 1636). In so doing, "[a] court must first look to the plain meaning of the agreement's language." *Buckley,* 441 F.3d at 695 (citing Cal. Civ. Code §§ 1638, 1644). "If the language in the contract is ambiguous, 'it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it[,]'" which means looking to the "'objectively reasonable' expectation of the promisee." *Buckley,* 441 F.3d at 695 (citations omitted). "If after this second inquiry the ambiguity remains, 'the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.'" *Id.* at 695–96 (citations omitted).

In Grounds One and Two,[5] petitioner claims the Board violated his plea agreement by not paroling him within a "minimum term of 10 years ... and a maximum of 13 years[.]" The California Court of Appeal rejected this claim, stating: "Petitioner pled no contest to second degree murder and was sentenced to 15 years to life on September 9, 1982. The record does not show that petitioner's plea agreement has been violated merely because he has served longer than 15 years in prison." Lodgment no. 8. In fact, petitioner's plea colloquy clearly indicates that, unless the trial court released petitioner on probation—which it did not, his sentence would be for fifteen years to life in state prison. Petition, Exh. D. Despite petitioner's self-serving declaration, *see* Declaration of Miguel Orozco ¶ 1, petitioner has not rebutted the California Court of Appeal's factual findings or shown the prosecutor made any promise to him that he would be released on parole within 10 to 13 years. Accordingly, the California Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VIII

■ Article I of the United States Constitution provides that neither Congress nor any state shall pass an ex post facto law. U.S. Const. Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. The ex post facto clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504, 115 S.Ct. 1597, 1601, 131 L.Ed.2d 588 (1995) (citations omitted); *see also Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) ("Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized ... that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them."). Thus, an ex post facto law "punishes as a crime an act previously committed, which was innocent when done[,] which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed. ..." *Collins*, 497 U.S. at 42, 110 S.Ct. at 2719 (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)); *Stogner v. California*, 539 U.S. 607, 612, 123 S.Ct. 2446, 2450, 156 L.Ed.2d 544 (2003).

■ In Ground One, petitioner claims the Board has subjected him to an "ex post facto" violation of his plea agreement by not releasing him on parole within 10 to 13 years. In Ground Five, petitioner claims the Board violated the ex post facto clause by using facts "not proven/found by a jury or admitted by Petitioner" to "recharacterize" petitioner's crime as first degree murder.[6] These claims are conclusory and

---

5. To the extent Ground Two can be read as claiming his underlying plea was not knowingly and intelligently entered into, or that his trial counsel was ineffective in allowing him to plead no contest to second degree murder, such claims challenge his underlying conviction rather than the 2006 parole hearing, *Rosas v. Nielsen*, 428 F.3d 1229, 1233 (9th Cir. 2005), and must be brought in a separate habeas corpus petition. *Hern v. Marshall*, 2009 WL 2971556, *5 n. 4 (E.D.Cal.); *Chavez v. Curry*, 2007 WL 4462939, *2 (N.D.Cal.).

6. To the extent petitioner's reference to "due process" and "facts of the crime that were not proven/found by a jury or admitted by Petitioner" is an attempt to raise a claim under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny, such a claim is without merit "because the Board did not increase [petitioner's]

without merit since petitioner has not identified any law that has been retroactively applied to him to his disadvantage. *Jones v. Gomez,* 66 F.3d 199, 204–05 & n. 1 (9th Cir.1995), *cert. denied,* 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *James v. Borg,* 24 F.3d 20, 26 (9th Cir.), *cert. denied,* 513 U.S. 935, 115 S.Ct. 333, 130 L.Ed.2d 291 (1994).

■■■■ Moreover, "the Ex Post Facto Clause, by definition, applies to the Legislative Branch, not to the courts or an administrative body, such as the Board of Parole Hearings." *Goings v. Sisto,* 2009 WL 4723600, *3 (E.D.Cal.); *Munro v. Subia,* 2009 WL 2868720, *10 (E.D.Cal.). Further, the Board's decision denying petitioner parole did not increase petitioner's sentence of fifteen years to life in state prison. "While petitioner might have hoped or expected to be released sooner, the Board's decision to deny him a parole release date because he would present an unreasonable risk of danger to society has not enhanced or otherwise 'altered' his punishment." *Siller v. Sisto,* 2009 WL 4048110, *14 (E.D.Cal.); *Goings,* 2009 WL 4723600 at *3. Accordingly, the California Supreme Court's denial of these ex post facto claims was neither contrary to, nor an unreasonable application of, clearly established federal law.

### IX

■■■■ The Fourteenth Amendment's due process clause provides that a person may not be deprived of life, liberty, or property without due process of law. The Supreme Court "examine[s] procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted); *Sass v. Cal. Bd. of Prison Terms,* 461 F.3d 1123, 1127 (9th Cir.2006). "Under the 'clearly established' framework of *Greenholtz* [ [7] ] and *Allen,* [ [8] ] ... California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan,* 306 F.3d 895, 902 (9th Cir.2002) (footnotes added); *see also Irons v. Carey,* 505 F.3d 846, 850 (9th Cir.2007) ("California Penal Code section 3041[ [9] ] vests [petitioner] and all other California prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." (footnote added)).

■■■■ In Ground Three, petitioner claims "the basis for [the Board's denials of parole to petitioner] are not supported by the record before the Board." Petition at 6. The Supreme Court in *Superinten-*

sentence beyond the statutory maximum of life imprisonment for his crime of second degree murder." *Duesler v. Woodford,* 269 Fed.Appx. 670, 671 (9th Cir.2008); *Abraham v. Marshall,* 288 Fed.Appx. 378, 380 (9th Cir. 2008).

**7.** *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**8.** *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

**9.** At the time of petitioner's parole hearing, California's parole scheme provided that the Board:

shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

P.C. § 3041(b) (2006).

*dent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), "clearly established that a parole board's decision deprives a prisoner of due process with respect to [his liberty] interest [in parole] if the board's decision is not supported by 'some evidence in the record,' or is 'otherwise arbitrary.' "[10] *Irons,* 505 F.3d at 851 (citations omitted); *Hill,* 472 U.S. at 455–57, 105 S.Ct. at 2774–75. When this Court assesses "Whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, [the Court's] analysis is framed by the statutes and regulations governing parole suitability determinations in [California]." *Irons,* 505 F.3d at 851; *Biggs v. Terhune,* 334 F.3d 910, 915 (9th Cir.2003). Thus, this Court "must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by 'some evidence' in [petitioner's] case constituted an unreasonable applica-tion of the 'some evidence' principle articulated in Hill[.]" *Irons,* 505 F.3d at 851.

Under California law, an inmate " 'shall be found unsuitable for parole and denied parole if, in the judgment of the [Board], the prisoner will pose an unreasonable risk of danger to society if released from prison.' " *Id.* (citations and footnote omitted). Factors the Board should consider include the inmate's:

social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the [inmate] may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 California Code of Regulations ("C.C.R.") § 2402(b-d).[11] However, the ov-

---

**10.** To the extent respondent argues the "some evidence" standard is not clearly established federal law in the parole context, his contention is without merit. *See Sims v. Rowland,* 414 F.3d 1148, 1151 (9th Cir.) ("Although the statutory formulation restricts federal law to Supreme Court precedent, ... 'Ninth Circuit precedent may be persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law [under the AEDPA], and may also help us determine what law is clearly established.' "), *cert. denied,* 546 U.S. 1066, 126 S.Ct. 809, 163 L.Ed.2d 637 (2005).

**11.** Circumstances tending to establish unsuitability for parole are that the inmate:

(1) committed the offense in an especially heinous, atrocious or cruel manner; (2) possesses a previous record of violence; (3) has an unstable social history; (4) previously has sexually assaulted another individual in a sadistic manner; (5) has a lengthy history of severe mental problems related to

the offense; and (6) has engaged in serious misconduct while in prison.

*In re Rosenkrantz,* 29 Cal.4th 616, 653–54, 128 Cal.Rptr.2d 104, 137, 59 P.3d 174 (2002), *cert. denied,* 538 U.S. 980, 123 S.Ct. 1808, 155 L.Ed.2d 669 (2003) (footnote omitted); 15 C.C.R. § 2402(c). On the other hand, circumstances tending to establish suitability for parole are that the inmate:

(1) does not possess a record of violent crime committed while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the result of significant stress in his life, especially if the stress has built over a long period of time; (5) committed the criminal offense as a result of battered woman syndrome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that indicate an enhanced ability to function within the law upon release.

erarching consideration in parole suitability decisions is public safety. *Irons,* 505 F.3d at 851; *see also In re Lawrence,* 44 Cal.4th 1181, 1212, 82 Cal.Rptr.3d 169, 190, 190 P.3d 535 (2008) ("[T]he relevant inquiry is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely some evidence confirms the existence of certain factual findings."); [12] *In re Shaputis,* 44 Cal.4th 1241, 1254, 82 Cal.Rptr.3d 213, 222–23, 190 P.3d 573 (2008) ("[T]he proper articulation of the standard of review is whether there exists 'some evidence' that an inmate poses a current threat to public safety, rather than merely some evidence of the existence of a statutory unsuitability factor.").

 Here, as discussed above, the California Court of Appeal found some evidence supports the Board's decision, and this finding is not an unreasonable application of *Hill.* To the contrary, the Board weighed the circumstances for and against granting petitioner parole and found petitioner unsuitable for parole based on a number of factors, including: (1) the nature of the commitment offense; (2) petitioner's prior criminal conduct, its escalating pattern, and petitioner's failure to profit from probation; (3) lack of sufficient participation in alcohol abuse programs; (4) the undocumented nature of petitioner's parole plans; (5) the continuing need for self help programs to learn how to cope with stress and conflict in a nondestructive manner; and (6) failure to fulfill

the Board's recommendations. These are all proper factors for the Board to consider under Section 2402.

 For example, the commitment offense may be a factor tending to show parole unsuitability if "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." 15 C.C.R. § 2402(c)(1). Factors supporting a finding that the inmate committed the offense in an especially heinous, atrocious, or cruel manner include the following:

> (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled, or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrates an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.

*Rosenkrantz,* 29 Cal.4th at 653–54 n. 11, 128 Cal.Rptr.2d at 137 n. 11, 59 P.3d 174; 15 C.C.R. § 2402(c)(1)(a-e). Here, the Board found multiple victims were attacked and the motive for the crime, which was merely an argument, was very trivial in relation to the offense. Lodgment no. 4 at 59–60. There is no dispute petitioner attacked multiple victims and that he "reacted with extreme . . . violence to [an] . . . argument[,]" which clearly supports the conclusion that the offense was animated by a trivial motive.[13] *In re Dannenberg,*

---

*Rosenkrantz,* 29 Cal.4th at 654, 128 Cal. Rptr.2d at 138, 59 P.3d 174; 15 C.C.R. § 2402(d).

**12.** "[U]nder *Irons, Lawrence* governs the application of the 'some evidence' standard." *Milot v. Haws,* 628 F.Supp.2d 1152, 1155 (C.D.Cal.2009).

**13.** Because the Board cited multiple factors for denying petitioner's parole, this Court

need not address whether the brutal nature of petitioner's crime alone provides some evidence that petitioner remains a danger to the public. *See Lawrence,* 44 Cal.4th at 1212, 82 Cal.Rptr.3d at 190, 190 P.3d 535 ("[T]he circumstances of the commitment offense (or any other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public.").

34 Cal.4th 1061, 1095, 23 Cal.Rptr.3d 417, 440–41, 104 P.3d 783 (2005), *cert. denied,* 546 U.S. 844, 126 S.Ct. 92, 163 L.Ed.2d 109 (2005); *Quinteros v. Hernandez,* 419 F.Supp.2d 1209, 1216–17 & n. 3 (C.D.Cal. 2006); *see also Rucker v. Sisto,* 2010 WL 56145, *5 (E.D.Cal.) ("Pent up anger and retaliation for a verbal altercation regarding an unknown subject are especially trivial reasons to commit ... murder. The conclusion that petitioner's motives were more trivial than those which conventionally drive people to commit ... murder is not unreasonable.").

The Board also considered petitioner's prior criminal history, and its escalation, as well as petitioner's failure to profit from probation in determining petitioner was unsuitable for parole. Lodgment no. 4 at 60. Indeed, the Board noted petitioner had been arrested twelve times, and petitioner conceded he had been convicted of grand theft and was on probation at the time of the commitment offense. *Id.* at 19–20, 60; Lodgment no. 2 at 3. "Petitioner's prior criminal convictions and grant[ ] of probation provide some evidence to support the Board's finding that petitioner has a pattern of criminal conduct and has failed to profit from society's previous attempts to correct his criminality." *Hunt v. Finn,* 2009 WL 1459173, *8 (E.D.Cal.).

The Board also considered petitioner's "history of alcohol abuse[,]" and determined petitioner "ha[d] not yet sufficiently participated in beneficial self help programs, mainly some type of a 12 step program to insure [his] ongoing recovering abstinence from alcohol use." Lodgment no. 4 at 60–61. Indeed, the California

Court of Appeal found "there was evidence that from mid–2003 until the date of his parole hearing in February 2006, petitioner failed to attend self[-]help programs[,]" Lodgment no. 8; *see also* Lodgment no. 4 at 28–31, and petitioner has not rebutted this factual finding.[14] Given the significant role alcohol played in petitioner's attack on Martinez and Bates, petitioner's failure to attend self-help classes aimed at ensuring his continued abstinence from drugs and alcohol provides some evidence to support the Board's determination that petitioner continues to pose an unreasonable risk of danger to society if released from prison.[15] *See, e.g., Jackson v. Carey,* 244 Fed.Appx. 133, 134 (9th Cir.2007) ("[T]here was 'some evidence' to support ... denial of parole, including not only the gravity of the commitment offense, but also inadequate parole plans and a failure to adequately participate in self-help programs such as Alcoholics Anonymous."); *Scott v. Salazar,* 2009 WL 4756226, *7 (C.D.Cal.) ("The undisputed effect alcohol has on petitioner's potential for violence, ... coupled with petitioner's ... sporadic participation in alcohol abuse programs, provide 'some evidence' supporting the Governor's conclusion that petitioner poses an unreasonable risk of danger to society if released on parole." (footnote omitted)); *Sifuentes v. Cates,* 2009 WL 577660, *5 (E.D.Cal.) ("[T]he evidence ... in this instance demonstrates that in addition to the circumstances of the commitment offense, Petitioner has not taken adequate steps to address his alcohol abuse problem which was a contributing factor in the offense. Given that alcohol/drugs played a signifi-

---

**14.** Indeed, petitioner conceded he had not participated in either Narcotics Anonymous or Alcoholics Anonymous since June 2003. Lodgment no. 4 at 29.

**15.** *See* Lodgment no. 12 (Psychological report by H. Glazeroff, Ph.D., indicating petitioner

"currently represents an average risk of dangerousness if released to the community" and further stating "[t]he single most significant risk factor for this inmate is a return to the use of alcohol or controlled substances. Such a relapse would definitely serve as a precursor to violence.").

cant role in the commitment offense, there is "some evidence" to support the ... legitimate concern that his prior alcohol abuse continues to render him a danger to public safety if released.").

Similarly, the Board found petitioner "continues to need self help in order to face, discuss, understand, and cope with stress and conflict in a non[-]destructive manner and until progress is made the inmate continues to be unpredictable and a threat to others." Lodgment no. 4 at 62. Given petitioner's failure to rebut the California Court of Appeal's finding that he did not attend self-help programs between mid–2003 and his parole suitability hearing in February 2006, Lodgment no. 8, this finding clearly constitutes "some evidence" to support the Board's determination to deny petitioner parole. *Torricellas v. Davison*, 519 F.Supp.2d 1040, 1056 (C.D.Cal. 2007); *see also Olivas v. Muntz*, 2009 WL 2848670, *11 (C.D.Cal.) ("[T]he Board also properly considered the benefit of additional self-help and educational/vocational programming.").

For the foregoing reasons, there is "some evidence" supporting the Board's 2006 determination that petitioner posed an unreasonable risk of danger to society or a threat to public safety if released from prison;[16] thus, petitioner was not deprived of due process of law. Accordingly, the California Supreme Court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law.

## X

■■■ "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal[.]'" *Bracy v. Gramley*, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975)); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *see also O'Bremski v. Maass*, 915 F.2d 418, 422 (9th Cir.1990) (petitioner entitled to have parole release date considered by tribunal that was free from bias or prejudice), *cert. denied*, 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1070 (1991). "Fairness, of course, requires an absence of actual bias. ..." *In re Murchison*, 349 U.S. at 136, 75 S.Ct. at 625. "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow*, 421 U.S. at 47, 95 S.Ct. at 1464 (quoting *In re Murchison*, 349 U.S. at 136, 75 S.Ct. at 625).

■■ In Ground Four, petitioner claims the Board denied him parole based on a no-parole policy.[17] The California Court of Appeal tersely rejected this claim, stating

16. In light of the factors discussed herein, there is no need for the Court to also discuss the other reasons the Board cited to deny petitioner parole.

17. As discussed above, in 2009, the Board granted petitioner parole, which would appear to contradict petitioner's claim that the Board has a no-parole policy. Moreover, the evidence petitioner attaches to his petition to support this claim, Petition, Exh. J (Declarations of Albert M. Leddy), Exh. K (2000 budget analysis from the Legislative Analyst's Office), relate solely to the policies of former California governors, and do not demonstrate petitioner was deprived of a fair hearing in 2006, or that the Board denied him parole as

part of a no-parole policy. *See, e.g., Dun v. Campbell*, 2009 WL 2365820, *10 (E.D.Cal.) ("The second amended petition references various testimony and/or statements of Board officials during the time period of 1999–2001 regarding an alleged 'no parole' policy for convicted murderers. There is, however, no relevant evidence of the existence of any such policy at the time of petitioner's 2005 parole hearing, nor evidence that the particular panel of the Board presiding over petitioner's 2005 parole hearing was not neutral and detached. The conclusory allegations that petitioner was denied individualized consideration by the Board fail to state a claim for habeas corpus relief."). For the same reasons, petitioner's citation to *Coleman v. Bd. of*

the "California Supreme Court has rejected petitioner's argument that there is a 'no-parole' policy." Lodgment no. 8; *see also Rosenkrantz*, 29 Cal.4th at 683–86, 128 Cal.Rptr.2d at 161–63, 59 P.3d 174 (California Supreme Court rejected claim that Governor Gray Davis had blanket policy of denying murderers parole, stating "the circumstance that the Governor has permitted the parole of two persons convicted of murder is inconsistent with the conclusion that he has adopted a blanket policy of denying parole to all murderers."). Here, there is simply nothing in the record showing the Board did not afford petitioner individualized consideration of parole, that the Board was biased by a no-parole policy during his hearing or that his parole was denied because of a no-parole policy. To the contrary, "the record shows the Board conducted a full review of all the available evidence and denied petitioner's parole based on proper grounds." *Bradshaw v. Kane*, 2009 WL 3829798, *9 (C.D.Cal.); *see also Brazil v. Davison*, 639 F.Supp.2d 1129, 1157 (C.D.Cal.2009) ("Petitioner's allegations in Ground Four directed toward a due process violation resulting from a purported 'anti-parole' policy by California's 'executive branch' are, at best, too vague, conclusory, and lacking in adequate factual and legal support to establish a basis for federal habeas relief."); *Allen v. Sisto*, 2009 WL 3246798, *11 (E.D.Cal.) ("Petitioner has submitted no evidence demonstrating that the Board operated under a no-parole policy or was otherwise biased at his 2006 hearing. As detailed above, the Board

provided petitioner with an individualized assessment of his suitability for parole, and there was 'some evidence' in the record to support the Board's decision to deny parole in this case."). Therefore, the California Supreme Court's denial of Ground Four was neither contrary to, nor an unreasonable application of, clearly established federal law.

**RECOMMENDATION**

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

DATE: February 1, 2010.

*Prison Terms*, 2005 WL 4629202 (E.D.Cal.) ("Coleman I"), *appeal dismissed by*, 228 Fed. Appx. 673 (9th Cir.2007), which addressed the Board's alleged no parole policy under Governors Davis and Wilson, does not benefit him. *See Coleman v. Cal. Bd. of Prison Terms*, 228 Fed.Appx. 673, 675–76 & n. 5 (9th Cir. 2007) (Dismissing as moot Board's appeal of district court's grant of habeas in *Coleman I*

when Board provided Coleman a new hearing in July 2005 and because "the record is bereft of any evidence that the Schwarzenegger administration instituted a 'no parole for murderers' policy" and also noting "the district court's findings in [*Coleman I*] and the evidence on which they are based should not be extrapolated to parole challenges by other prisoners.").